B. A. Dusckiewicz *v.* Jack Carter, D.B.A. Jack Carter Enterprises.

(52 A2d 788)

February Term, 1947.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed May 6, 1947.

*Asa S. Bloomer* for the plaintiff.

*Ryan, Smith & Carbine* for the defendant.

STURTEVANT, J. This is a tort action. The complaint is based upon the alleged negligence of the defendant in conducting a wrestling match, resulting in injury to the plaintiff, a spectator at that contest. The plaintiff had a verdict and judgment below in the sum of $150. damages and the case is here on exceptions by each of the parties. The plaintiff claims that the court erred in refusing to grant his motion to set aside the verdict upon the grounds that it is grossly inadequate in view of all the evidence. The defendant claims error committed by the court in refusing to grant his motion for a directed verdict in his favor made at the close of all the evidence.

We first consider the defendant's motion for a directed verdict. Material to this issue the jury could reasonably find the following facts from the evidence, viewed in the light most favorable to the plaintiff.

The defendant does business under the name "Jack Carter Enterprises", operating out of the city of Burlington where he has his headquarters. As one of his enterprises, Carter put on a show at the armory in Rutland on the evening of June 6, 1945. The principal feature of his show was a wrestling match. Through a booking office in Montreal, Carter engaged as contestants in this match two men skilled in the art of wrestling, one by the name of Savoli and the other's name is Ryan. Ryan had performed for Carter three times previous to this engagement and Savoli, once. At some time before June 6, 1945, Carter went to Rutland and made the necessary arrangements for putting on this show. Compensation for each wrestler, as arranged by Carter through the booking office, was a guaranty that each should receive a certain flat sum with a percentage option. That is, if the agreed percentage of the gate receipts amounted to more than the sum guaranteed then the wrestler concerned could elect to receive such percentage in lieu of the flat sum named in the guaranty. Compensation paid by Carter did not include payment of hotel bills or other expenses, in addition to payment as above stated. On the evening of the show Carter saw the wrestlers, made sure that they were ready for the contest but gave them no instructions as to the manner of their behavior during the contest. Savoli then weighed about 230 lbs. and Ryan about 225 lbs.

A "ring" was erected in the armory as the arena where the

contest was staged. This arena platform was at an elevation of about four feet from the floor and was enclosed by three ropes extending around the outsides of it. Carter inspected this "ring" after it had been set up. Folding chairs fastened together in sets of three or four were provided as seats for spectators. The four or five rows nearest the "ring" were called "ring side seats" and sold for $1.50 each and the others were general admission seats and were cheaper. The chairs were not fastened to the floor.

The plaintiff resides in West Rutland and at the time in question was running a barber shop there. The owner of this shop was in service of the United States armed forces and it was agreed between him and the plaintiff that when the owner returned he was to take over this shop. The owner returned sometime in October or December of 1945 and then took over that business. The plaintiff made about seventy-five dollars per week from his barbering business and he also got about $20. per week as his part of the proceeds of a licensed pin ball machine then in the shop. As stated by the plaintiff in cross examination, he was "a wrestling fan, rather". He invited two of his friends to attend this match with him and at the armory entrance he purchased three tickets for ring side seats. These seats were in the front row nearest the ring. A person in the employ of the defendant ushered them to their seats which were numbered to correspond with numbers on their tickets. The plaintiff paid $1.50 each for the seats.

After the match had been going on for some time, one of the wrestlers threw the other through the ropes in the direction where the plaintiff was seated. When the plaintiff saw the wrestler coming he put up his right hand to protect himself from the oncoming wrestler landing on him and as a result he received a sprained hand and wrist. It is for this injury and resulting alleged damages that the plaintiff seeks to recover.

The defendant based his motion for a directed verdict on grounds which may be briefly stated as follows. The plaintiff assumed the risk of the danger which resulted in his alleged injury; the wrestlers were independent contractors and not employees of the defendant and the evidence does not show any negligence on the part of the defendant.

As to the question of assumption of risks, the evidence shows that the plaintiff was a business visitor of the defendant at

the time and place in question. He had paid $1.50 for his seat and was occupying it for the purpose as intended by the defendant. *Wool* v. *Larner,* 112 Vt 431, 437, 26 A 2d 89. An invitee at a place of amusement ordinarily assumes the risk of an obvious danger or of one that is a matter of common knowledge; conversely, such a person does not assume the risk of a hidden or undisclosed danger, not of common knowledge, in the absence of warning or personal knowledge. *James* v. *Rhode Island Auditorium, Inc.* 60 RI 405, 199 A 293, 295, and cases cited. That the danger which resulted in the plaintiff's injury was not an obvious danger is self-evident. However, the defendant contends that the plaintiff must be taken to have assumed the risks of the danger which resulted in his injury, because he had personal knowledge of it and also because such danger is a matter of common knowledge, and he cites several baseball cases in support of this contention. These cases hold that an invitee, familiar with the game of baseball, buying a seat in a part of the stands not protected by screens, who is hit by a batted ball during the progress of a ball game proceeding in a normal manner, can not recover, because it is a matter of common knowledge that chance is an important factor in determining the direction a batted ball may take as it leaves the bat. Such spectator assumes the risks of dangers of which he has personal knowledge and also he assumes the risks of those dangers which are matters of common knowledge.

The defendant in his brief makes the following statement. "The intent and purpose of a baseball game is to hit the ball as far as possible, and apparently one of the purposes of a wrestling match is to throw a wrestler as far as possible." It is to be noted that while the defendant makes a positive assertion as to the purpose and object of baseball, he is less positive and more cautious in speaking of the purposes and objects of wrestling. If it is true that one of the objects of wrestling is to throw a wrestler as far as possible from the ring, such purpose can not be said to be a matter of common knowledge, and we so hold. The number of people who know how a wrestling match is conducted and what may reasonably be expected to happen there is small when compared with the great number who know what may reasonably be expected to happen at a ball game played in the normal manner.

While the record shows that the plaintiff stated in cross exam-

ination that he is a "wrestling fan rather", there is nothing therein showing the rules under which this contest was conducted nor whether such rules permit one wrestler to throw the other from the ring and neither does it appear that the plaintiff had ever seen that done previous to the occasion in question. From what has been hereinbefore stated, it follows that it can not be held as a matter of law that the plaintiff assumed the risks of the danger which resulted in his injury.

Whether the wrestlers were employees of the defendant or were independent contractors is not important in determining the questions before us. The defendant was putting on a show and as a feature of this he engaged these wrestlers to put on this match. It was his business to know the kind and type of performance that he was exhibiting and to use reasonable care as to location of seats and all other matters connected with this enterprise, for the reasonable protection of his invitees. Whether he performed this duty was, under the circumstances, a jury question. *Wool* v. *Larner,* 112 Vt 431, 437, 26 A2d 89; also see Annotation in 98 ALR 558, et seq. and *Ivory* v. *Cincinnati Baseball Co.,* 62 Ohio App. 514, 24 NE 2d 837. The court's refusal to grant the defendant's motion for a directed verdict was without error.

The plaintiff's exception which he has briefed is based on the action of the court in refusing to grant his motion to set the verdict aside and grant a new trial. Briefly stated, this motion was on the grounds that the verdict was grossly inadequate and insufficient, contrary to the weight of the evidence and contrary to law. This motion was addressed to the discretion of the trial court and its ruling thereon is reviewable only when abuse of discretion is made to appear. *Rutland Sash & Door Co.* v. *Gleason,* 98 Vt 215, 225, 126 A 577, and cases cited. If the verdict can be justified in any reasonable view of the evidence, considered in the light most favorable to the defendant, the ruling must stand. So viewed the evidence shows the following facts.

The plaintiff received a sprained wrist and hand as hereinbefore stated on the evening of June 6, 1945. He opened his barber shop the next morning but, being unable to do his work there, he closed the shop, went home and tried to reduce the swelling in his right hand by home treatment. On June 20, 1945, his hand being no better, he went to see Dr. Williams in Rutland City. He was

taken to the Rutland Hospital, where his hand was x-rayed. This showed that no bones were broken. Then a cast was put on covering his arm from below the elbow to his fingers. At that time his hand was swollen and the swelling extended up his lower arm. The cast was on for three weeks. When the cast was removed his hand and wrist were still swollen and were blue in color. He has short thick muscles which respond to treatment for sprain less rapidly than longer and thinner muscles. He continued to see Dr. Williams and receive treatments for his hand three or four times each month from June 20, 1945, to April 2, 1946, excepting during the month of November. It does not appear that he saw Dr. Williams during that month. Each time he saw his doctor, including the call on April 2, 1946, there was more or less swelling in his hand and wrist. He complained of pain and limitation of action in his hand. During the period mentioned he made 31 calls on his doctor. Dr. Powers, a practicing physician in Rutland, was introduced as a witness by the defendant. He saw the plaintiff on September 10, 1945. At that time he examined plaintiff's right hand and found some slight swelling at the base of the thumb but there was normal action in the hand and wrist. He has no knowledge as to the condition of plaintiff's hand before or after that date. Before the accident the plaintiff ran a barber shop on Marble Street in West Rutland. Since the accident he has not operated that shop nor worked at the barbering trade. The shop was closed from June 7, 1945, to the time its owner returned from war service in October or December, 1945, when the owner took it over. The plaintiff has done some work as a bartender at the Little Club at Hampton since the accident. How long he has worked there is not shown by the evidence, neither does it appear what wages he received. His bill to Dr. Williams was $97. Proper treatment for the hand injury required that it should be allowed to rest and that heat should be applied, as advised by plaintiff's doctor.

From the foregoing it appears that after paying his doctor's bill of $97. the amount of the verdict remaining would be $53. That is the amount awarded the plaintiff for his loss of time, pain and suffering, the inconvenience of a more or less disabled and swollen hand over a period of about nine months, including three weeks when his hand and lower arm were in a cast, and 31 trips

from West Rutland to Rutland to see his doctor, all as shown by the evidence hereinbefore stated. That $150. is grossly inadequate to compensate the plaintiff for the damages he sustained is self-evident. If the plaintiff is entitled to recover, he is entitled to receive a reasonable amount for the damages which are shown to have resulted to him from the accident in question. It follows that in refusing to set the verdict aside and grant a new trial in accordance with plaintiff's motion, the discretion of the trial court was exercised on grounds, or for reasons, clearly untenable, or to an extent clearly unreasonable. Therefore, the judgment must be reversed. *Parizo* v. *Wilson et al,* 101 Vt 514, 525, 144 A 856, and cases cited.

*Judgment reversed. Plaintiff's motion for a new trial on all issues raised by the pleadings is granted, and cause remanded.*