RUTH WILFORD *v.* PETER SALVUCCI.

(95 A2d 37)

Special Term at Rutland, November, 1952.

Present: SHERBURNE, C. J., JEFFORDS, CLEARY, ADAMS and CUSHING, JJ.

Opinion Filed February 3, 1953.

*Leary & Leddy* for the plaintiff.

*McNamara & Larrow* for the defendant.

CLEARY, J. This is an action of tort for negligence. Trial was by jury with a verdict for the plaintiff. The case is here on the defendant's exceptions to the overruling of his motions for a directed verdict and for judgment notwithstanding the verdict; also on the plaintiff's exceptions to the overruling of her motion to set aside the verdict as to damages only, for a new trial on the issue of damages only and to the admission of evidence. The cause was passed to this Court before final judgment under the provisions of V. S. 47, § 2124.

At the time of the alleged accident the plaintiff and her husband owned the property where they resided on Airport Drive in South

Burlington. Two sets of low hanging electric wires ran across their driveway to their buildings. The defendant had a right of entry over the plaintiff's premises, but that did not include the right to interfere with the electric power wires, one of which was about 7 feet and another 5½ feet above the ground. At about dusk on August 9, 1951, the plaintiff saw the defendant's gasoline truck, driven by one of his employees, start up her driveway. She knew the truck could not get underneath the electric wires, so she ran out of her house into the middle of the driveway in an endeavor, by motioning with her arms and by yelling and hollering at the truck driver, to stop the truck from coming up the driveway, explaining to him that the wires were too low, that he would break them. The truck was going about five miles per hour and did not change its speed at any time. As it came toward her she kept backing up, motioning for it to go back. She backed up about ten feet in this fashion. She thought the driver would stop. When she saw he was not going to stop the truck and when it was about a foot and a half from her she stepped off the driveway hollering at him through the open window of the cab, trying to explain to him. As it went by her she was about three inches, four inches at the most, from the body of the truck and something at the edge of the truck hit her inside her right thigh, threw her off balance, knocked her down and she landed on her back. The truck kept on, caught and broke the wires and caused the pole to fall. At the time of the accident the plaintiff's child and grandchild, three and four years old, were playing on the lawn. When asked her purpose in trying to stop the truck from coming up the driveway, the plaintiff testified "if it broke those wires and the babies had gone up, one of them, and picked up one of those wires, they would have been electrocuted."

■■ The defendant's motions for a verdict and for judgment notwithstanding the verdict are on the ground that the plaintiff was clearly guilty of contributory negligence as a matter of law. We shall consider the two motions together. In considering them the evidence must be taken in the light most favorable to the plaintiff. *Hill* v. *Stringer,* 116 Vt 296, 299, 75 A2d 657; *McLaughlin* v. *Getman,* 117 Vt 25, 26, 83 A2d 513. The defendant claims that the case is squarely within the rule laid down by this Court in *Rush* v. *Cody,* 107 Vt 326, 178 A 891. The facts in that case were so different from the facts here that the two cases are clearly distinguishable. In that case the plaintiff was working in the highway.

He knew that the truck was approaching, knew that the driver was not competent and previously on that same day the plaintiff had been nearly hit by the same truck, yet he continued to work with his back to the truck. When he faced about and threw up his hand as a signal for the truck to stop so he could get on, the fender brushed him and he was knocked down. Here the plaintiff was constantly on the lookout attempting to warn the driver to stop the truck in an effort to protect her babies. The rule, known as the rescue doctrine, is well settled that one who sees a person in imminent and serious peril caused by the negligence of another cannot be charged with contributory negligence, as a matter of law, in risking his own injury, provided the attempt is not recklessly or rashly made. Restatement, Torts Vol. 2 § 472; 38 Am Jur 912; 19 ALR 5; 158 ALR 190; 65 CJS 736; and cases there cited. It cannot be said as a matter of law that the present plaintiff failed to exercise for her own safety the measure of care that a prudent person would or might have exercised in the same circumstances. The defendant's motions were properly overruled.

The plaintiff's motion to set aside the verdict as to damages only and for a new trial on damages only was on five grounds: 1. That the jury either misconceived or misconstrued or disregarded the court's charge on damages; 2. That the verdict was contrary to the weight of the evidence to sustain the verdict; 3. That there was no evidence to sustain the verdict; 4. That the verdict was grossly inadequate; 5. That the plaintiff's right of recovery had been established and that the error was only on the extent of her recovery. The first and third grounds present questions of law and the ruling is reviewable here. *Mullett* v. *Milkey*, 113 Vt 42, 44, 29 A2d 806; *Cenate* v. *Hunter*, 115 Vt 402, 404, 62 A2d 645; *Collins* v. *Fogg*, 110 Vt 465, 470, 8 A2d 684. The second and fourth grounds were addressed to the discretion of the trial court and its ruling thereon is reviewable here only when abuse of discretion is made to appear. *Goldberg* v. *Gintoff*, 112 Vt 43, 45, 20 A2d 114; *Dusckiewicz* v. *Carter*, 115 Vt 122, 126, 52 A2d 788. If the motion should have been granted on either the first or third ground we need give the other grounds no further attention. *Collins* v. *Fogg*, 110 Vt 465, 470, 8 A2d 684; *Cenate* v. *Hunter*, 115 Vt 402, 406, 62 A2d 645.

If the verdict can be justified in any reasonable view of the evidence, considered in the light most favorable to the defendant,

the ruling of the court below must stand. *Dusckiewicz* v. *Carter,* 115 Vt 122, 126, 52 A2d 788; *Cenate* v. *Hunter,* 115 Vt 402, 404, 62 A2d 645; *Russell* v. *Pilger,* 113 Vt 537, 551, 37 A2d 403. The plaintiff suffered a lumbar sacral back sprain while at work in 1944 and could not straighten up. She stayed away from work about two weeks. Dr. Maynard, an orthopedic specialist, took x-rays of her lower back and treated her for about two months. She had back pain from that time off and on. She suffered another back sprain while at work in 1947. In July 1951 she was suffering pain in her lower back and legs and consulted Dr. Rust, an orthopedic specialist. He took x-rays of her lumbar sacral region and prescribed a steel brace with leather bindings which she still wore at the time of the trial. On May 2, 1952, four days before the trial, she was examined by Dr. Kuhlmann, an orthopedic surgeon, at the request of the defendant. He testified that she complained of discomfort and pain in her lower back and legs, that he could find no corroborating evidence, that he did not believe she had pain. The plaintiff returned to her employment in December 1951, has done the same work as before the accident and has worked steadily since except for one or two days. The jury could reasonably have found that some of the plaintiff's pain and suffering was due to her injuries previous to the accident on which her suit was brought and that she did not have pain at the time Dr. Khulmann examined her.

But the evidence was uncontradicted that when she was knocked down she was unable to get up; she experienced sharp pain in her leg inside her thigh and in the lower part of her back; she was unable to sleep that night; the next morning she had no feeling in her legs; she was taken to the hospital in an ambulance; she remained in the hospital from August 10 to September 7; her back and legs ached a great deal; she had to sleep on a bed board; the pains felt as if needles were pushing on her spine and the pain worked down into her leg; since the accident her back ached a lot more, and she had sharp pains in her leg which she did not have before; many nights she could not sleep; she was examined by her employer's doctor who would not allow her to return to work until December; her legs began to swell at the shop and she had to take her shoes off when she got home; she was very tired and her back throbbed; she had to put her feet on a chair or go to bed; she had to sleep on a hard cot; she experienced no fatigue at work prior to the accident; she took aspirin on the job to relieve her pain

and discomfort. The medical testimony was undisputed that the accident caused a low lumbar sacral sprain, the x-rays showed "her fifth lumbar vertebra was pushed together," leaving a narrowed space as compared to normal; it affects her bending backward so that her backward motion is 15 degrees as compared to a normal of 45 degrees, and at the time she was examined by her employer's doctor, she had quite a large swelling in the lower part of her spine and was very tender in that swelled area.

The court charged that if the jury found the plaintiff entitled to recover anything she was entitled to recover for wages she had lost, which it was agreed amounted to $935, and for future loss of wages, if she had proved she was going to suffer any loss of future wages, and for the conscious pain and suffering she had from the accident. The court charged out future pain and suffering because there was no evidence of the plaintiff's life expectancy. The verdict was for $1000, so the maximum amount which the jury allowed for pain and suffering and future loss of wages was $65.

■ Where the verdict is either so great or so small as to plainly indicate that in reaching it the jury either disregarded the testimony, or acted from passion or prejudice, it is the duty of the court to set it aside. Where the damages rest in the judgment of the jury they are, of course, not to be held either excessive or inadequate, unless they are grossly so. *Barrette* v. *Carr*, 75 Vt 425, 428, 56 A 93; *Platt, Admx.* v. *Shields and Conant*, 96 Vt 257, 272, 119 A 520. Here the undisputed evidence showed that the accident aggravated, at least, the plaintiff's previous injuries, and as a result, she suffered great and long continued pain. The amount allowed by the jury for that element of damage was grossly inadequate and the verdict had no reasonable basis on which it can stand.

■■ If the plaintiff's motion had been to set aside the verdict and grant a new trial on all the issues it would have been error to deny it. *Parizo* v. *Wilson*, 101 Vt 514, 519, 144 A 856; *Dusckiewicz* v. *Carter*, 115 Vt 122, 128, 52 A2d 788. But here the question of liability because of the plaintiff's contributory negligence was a very substantial one; the presiding judge below stated he thought the court should direct a verdict for the defendant but was "sold on the idea it was better practice to let the case go to the jury and then handle it through a motion to set aside the verdict." The jury reported at 9:20 P. M. "We have come to sort of a deadlock" and again at 12:05 A. M. "We are satisfied it is a dead-

lock," though in reply to the court's inquiry the foreman stated that the court's charge to the jury "seems to be clear to everybody." The court would have discharged the jury at that time but granted the plaintiff's request that the jury further consider the case. The verdict was finally returned at 1:40 A. M. From all the circumstances the plain inference can be drawn that the verdict was the result of a compromise and was reached by the surrender of conscientious convictions by some of the jury. If requested the verdict should have been set aside, not only as to damages, but in its entirety. *Parizo* v. *Wilson,* 101 Vt 514, 522, 525, 144 A 856; *Farr* v. *Fisher,* 107 Vt 331, 336, 178 A 883, 98 ALR 926. Because the plaintiff's motion was limited to damages only it was not error for the court to deny the motion.

 The plaintiff objected to a question after it was answered by her witness, Dr. Lynch, during his cross examination. The record fails to show that the question was answered before the objection could have been interposed, and it will not be presumed. The answer was responsive and the objection was too late to be availing. *Ford* v. *Hersey,* 92 Vt 405, 412, 104 A 875; *Reeves* v. *Redmond,* 95 Vt 106, 109, 113 A 711; *Cummings* v. *Conn. Genl. Life Ins. Co.,* 102 Vt 351, 358, 148 A 484.

We could enter judgment on the verdict but the plaintiff now has filed a motion to set aside the verdict and for a new trial on all issues. The defendant does not object to the motion. *In order to prevent a failure of justice we shall grant the plaintiff's latest motion, reverse pro forma the ruling of the court below denying the plaintiff's original motion to set aside the verdict and we shall remand the case for a new trial on all issues.*