Joseph A. Abel, Admr. Est. of Russell C. Jones, Jr., *v.* Louis Salebra.

(61 A2d 605)

May Term, 1948.

Present: Moulton, C. J., Sherburne, Buttles, Sturtevant and Jeffords, JJ.

Opinion filed October 5, 1948.

*Vernon J. Loveland* for the defendant.

*Bloomer & Bloomer* for the plaintiff.

MOULTON, C. J. This accident occurred early in the morning of June 8, 1945, on the highway leading from the village of Castleton to the City of Rutland. The plaintiff's intestate was a guest passenger in an automobile driven by the defendant. The issues to be decided are whether the trial court committed error in denying the defendant's motions to direct a verdict in his favor, and to set aside the verdict rendered for the plaintiff. Both motions were based upon the same grounds; that there was no evidence fairly and reasonably tending to show that the defendant was guilty of gross negligence as required by P. L. 5113 (Vt. Stats. Rev. 1947, § 10,223) ; and that the evidence conclusively showed that the plaintiff's intestate was contributorily negligent, and assumed the risk of injury.

The plaintiff's intestate, the defendant and three companions, two of whom were called as witnesses, left a resort known as the Little Club, in Hampton, New York, across the State line from Fair Haven, Vermont, at about one o'clock in the morning. They went in two automobiles, the plaintiff's intestate and the defendant were in the first one, and the others followed in the second at a distance of between 100 and 300 yards. They drove east through the villages of Fair Haven and Castleton. After leaving the latter place the road proceeds through an underpass and then over a cement bridge. About a quarter of a mile beyond there is another bridge, after which the grade ascends for at least 75 feet and then enters a very sharp curve to the right. At this point the ground on the right or south of the highway rises and the road is protected by a stone retaining wall and crib-work of logs. On the left or north side of the highway there is a precipitous drop of 100 feet to the Castleton River covered with trees and bushes and there is a guard fence along the edge consisting of wooden posts, eight to ten inches in diameter, set in the ground and connected by two wire cables, two inches in circumference. The cement surface of the road is 20 feet wide and there is a shoulder on each side. On the night in question the surface was dry. So far as appears no other traffic than the two automobiles mentioned was in the vicinity.

According to his own testimony the defendant was driving at the rate of 40 to 45 miles an hour. He was familiar with the road. His car had been recently inspected and was in good condition, with the brakes working properly; the plaintiff's intestate made no com-

ment concerning his management of the vehicle; the car was a Ford convertible roadster, with the top down. As it entered the curve the rear end began to sway, which he attributed in part at least to the presence of loose dirt that might have been upon the concrete, which he did not see. The car went out of control, skidded first to the left side of the highway, then back to the right, again to the left, and went through the guard fence and down the declivity towards the river. The defendant did not remember applying the brakes although he said he might have done so. Two of the occupants of the second car testified that, as the skid began, dust arose behind the defendant's car. They also corroborated the defendant's testimony as to speed although the one who was driving said that, while his speed was approximately the same, he did not look at his speedometer.

An inspector of the Motor Vehicle Department arrived at the scene shortly after the accident. As it was dark he blocked off half of the road so that there would be no danger of interference by passing vehicles with the marks on the road which were visible, and remained there until daylight when he was joined by another inspector. The two examined the vicinity, made measurements, prepared a rough diagram and took photographs. Their investigation resulted in the discovery of a broad, single skid mark, four to six inches wide, which began on the extreme northerly, or, as the defendant's car was travelling, left edge of the road, about seventy-five feet easterly from the bridge, and extended for a distance of sixty-four feet, in which six posts of the guard fence were broken off at the ground. One of the inspectors determined that this mark had been made by one of the left tires of the car. At the end of this mark there was an interval of thirty-one feet and ten inches in which no indication of skidding appeared, after which space another skid mark began at a point seven feet three inches from the southerly, or right hand, side of the road, one hundred and eight feet long, which curved first to the right and then diagonally across the road to the left until it reached the place where the car broke through the guard fence and went over the bank. It was open to the jury to find that this mark was caused by one or both of the right hand tires of the automobile. Still another skid mark was found, parallel with the one just described and on the left of it at a distance corresponding to the width of the car which ended at the place where the automobile left the road and extended

back from that point for a distance of thirty-three feet. All of the three marks were the same in appearance, and the last one could have been found to have been caused by the left tires or one of them. At the place where the car left the road five fence posts were severed at the ground, a telephone pole, eight to ten inches in diameter, situated six feet north of the road was broken off in the same manner, and a metal highway sign, east of the pole, supported by a one inch steel channel iron was bent over. The automobile came to rest among the trees and bushes which covered the downward slope, which were laid over to the north for some distance, and was fifty-six feet northeasterly of the telephone pole, and thirty-one feet down the bank from the fence, having almost completely reversed the direction in which it was proceeding upon the road. A large spot of blood was observed directly above the car and nine feet north of the edge of the highway, and this might have been found to indicate the position of the body of the plaintiff's intestate, after having fallen or been thrown from the car.

The defendant relies upon *Kelley* v. *Anthony,* 110 Vt 490, 8 A2d 641, as being factually in support of his claim that the evidence in the present case fails to show gross negligence on his part. That was an action brought by a guest passenger against the driver of an automobile, under P. L. 5113. The accident occurred upon a smooth, dry gravel road, upon which the defendant had been driving on the right hand side. Before the accident there had been nothing about the operation of the car or its speed that attracted the attention of the plaintiff, or her mother, who was with her. Taking the evidence most favorably for the plaintiff, the other pertinent facts are briefly, yet comprehensively, stated in the following excerpt from the opinion (p. 493, 110 Vt) : "The car entered a curve to the left at a speed of about 50 miles per hour. It went into this curve on the left side of the road and into the gutter. How far the car was to the left of the center when it entered the curve is not shown. One corner of the car seemed to sink suddenly and the car swerved. It is not clear whether this sudden sinking came just before or after the car went into the gutter. It proceeded down the road at about the same rate of speed and kept going all over the road from side to side, from left to right and swaying. It hit a telephone pole and broke and dragged it a short distance and the car finally stopped about 400 feet from the curve and off the right hand side of the road. At the time of the acci-

dent there were no other cars in the immediate vicinity. The day was clear with the sun shining at the time." To these circumstances, it may be added that the evidence did not disclose the degree of curvature of the road although one witness said that it was "sharp."

It was held that the conduct of the defendant, as shown by the evidence, both before and after entering the curve, was not such as to raise a reasonable inference that it was due to indifference to his guest or utter forgetfulness of her safety and that, whatever the cause of his loss of control of the automobile, the evidence failed to indicate that such loss of control or the failure thereafter to regain it was the result of any act or omission on his part amounting to gross negligence; hence, that there was no error in the ruling of the trial court in granting the defendant's motion for a directed verdict.

Although the facts in *Kelley* v. *Anthony* are in many respects similar to those in the case before us, the analogy is not so complete as to be conclusive. "It has been found by experience that the decided cases are of small assistance in determining whether the evidence in a given case tends to show gross negligence, and that each such case must stand mostly on its particular facts, considered in the light of accepted principles of law", *Hall* v. *Royce,* 109 Vt 99, 104, 192 A 193, 195. The test to be applied here is whether there was evidence from which the jury would be justified in finding that the defendant's conduct was the result of an indifference to his duty to his guest or an utter forgetfulness of the latter's safety. *Powers* v. *Lackey,* 109 Vt 505, 506, 1 A2d 693.

It is true that the mere fact that a motor vehicle skids does not of itself constitute negligence on the part of the operator. *Gould* v. *Gould,* 110 Vt 324, 328, 6 A2d 24, and cases cited. It is a matter of common knowledge that such a departure from the normal course is not necessarily the result of a high rate of speed. But from the description of the scene of the accident and the marks on the surface of the highway, as given in the testimony of the Motor Vehicle Inspector, and the photographs and diagram, it was open to the jury to find that, notwithstanding the testimony of the defendant and those in the following car, the automobile was being driven at an excessive and dangerous rate of speed, which was the cause of the defendant's loss of control—a speed so great that the car skidded, first careening with only the left wheels in contact

with the surface of the road, later upon the right hand wheels, those on the left being raised above the ground, and finally upon all four wheels, demolishing or damaging the guard fence, the telephone pole and the highway sign, until it plunged over the bank, coming to rest in the position already described. Photographs of the car, taken after the accident, and showing extensive damage, indicate the force with which it was propelled through the various obstacles in its path. No sudden or unsuspected mechanical deficiency which might explain its erratic progress is suggested.

 No doubt the testimony as to the previous prudent driving by the defendant was for consideration on the question of speed (*Kelley* v. *Anthony*, 110 Vt 490, 495, 8 A2d 641; *Tyrrell* v. *Goslant*, 93 Vt 63, 69, 106 A 585) as well as that concerning the failure of the plaintiff's intestate to protest with regard to the management of the vehicle. See *Dessereau* v. *Walker*, 105 Vt 99, 102, 163 A 632; *Sorrell* v. *White*, 103 Vt 277, 286, 153 A 359. But these circumstances are not conclusive. Taking the evidence and the inferences resulting therefrom in the light most favorable for the plaintiff, the issue of gross negligence was for the jury.

██ The other grounds of the motion are based upon evidence that the defendant, to the knowledge of the plaintiff's intestate, had been drinking at the bar of the Little Club. For this reason it is argued that the latter was contributorily negligent in riding in the automobile and assumed the risk of whatever injury might thereby ensue. The defendant, according to his own testimony, consumed two bottles of beer and one "drink" of an unspecified nature during the hour that he was there, but he denied that he was at all under the influence of intoxicating liquor. There was other testimony to the effect that he showed no sign of intoxication. "A guest is not negligent in riding with an intoxicated driver, if he is unaware of the intoxication or does not notice facts which would arouse the suspicions of a person of ordinary prudence." *Powers* v. *State,* 178 Md 23, 11 A2d 909, 913; see also *Steele* v. *Lackey,* 107 Vt 192, 199, 177 A 309. It cannot be assumed that the plaintiff's intestate observed, or ought to have observed, indications of intoxication which were not detected by the other witnesses.

Neither can it be said as a matter of law that the plaintiff's intestate voluntarily put himself in the way of a danger which he knew and comprehended or which was so obvious that he must be

taken to have known and comprehended it, so that the doctrine of assumption of risk can be successfully invoked against him. *Waterlund* v. *Billings,* 112 Vt 256, 261, 23 A2d 540, and cases cited.

We find no error in the denial of the defendant's motion for a directed verdict upon any of the grounds alleged. What has been said disposes also of the motion to set aside the verdict.

*Judgment affirmed.*