In the Matter of EDITH E. OWENS, Appellant, against J. RAY-MOND McGOVERN, as Comptroller of the State of New York, Respondent.

Argued October 10, 1955; decided January 12, 1956.

*Jacob K. Javits, Attorney-General* (*George H. Rothlauf* and *James O. Moore, Jr.,* of counsel), for respondent. I. It cannot be said as a matter of law that decedent's death was the natural and proximate result of an accident sustained in the performance of duty. (*Matter of Masse* v. *Robinson Co.,* 301 N. Y. 34; *Matter of Odell* v. *McGovern,* 308 N. Y. 678; *Matter of McCadden* v. *Moore,* 301 N. Y. 760.) II. Whether or not the events of March 12, 1951, constituted an accident was a question of fact and, therefore, within the exclusive province of the Comptroller for determination. It matters not that the Workmen's Com-

pensation Board determined such question otherwise. (*Matter of McCadden* v. *Moore,* 301 N. Y. 760; *Elder* v. *New York & Pennsylvania Motor Express,* 284 N. Y. 350; *Neenan* v. *Woodside Astoria Transp. Co.,* 261 N. Y. 159; *St. John* v. *Fowler,* 229 N. Y. 270; *Matter of Odell* v. *McGovern,* 308 N. Y. 678; *Matter of Trowbridge,* 266 N. Y. 283.) III. No competent proof was excluded by the hearing officer.

DESMOND, J. The question of law is this: on the hearing of an application for accidental death benefits from the State Employees' Retirement System under section 81 of the Civil Service Law based on an allegation that death was caused by a heart attack due to strain and exertion in State employment, and where there is proof of such strain and exertion and of a fatal heart attack, may the State Comptroller deny the application without permitting the applicant to introduce medical evidence of causation? Our answer is " no ".

Summarized, petitioner's proof before the hearing officer was that her husband, forty-five years old, while working as a junior civil engineer for the New York State Department of Public Works, was required as a member of a survey party staking out a proposed right of way to climb up and down a steep slope at the time when the ground was icy and covered with snow, that during that work decedent complained of a chest pain and shortness of breath whereupon he was relieved of those particular duties, but that the next morning he suddenly died of an acute coronary thrombosis. The Comptroller rejected the widow's claim, holding that her husband's death was not caused by an " accident " within the meaning of section 81 of the Civil Service Law. The Appellate Division affirmed, stating that its reasons therefor were the same as stated by that court in *Matter of Odell* v. *McGovern* (283 App. Div. 585, affd. 308 N. Y. 678). The Comptroller, so the Appellate Division wrote, " acted within the permissible range of his power in rejecting the claim ". In the *Odell* case (*supra*), the widow of a State-employed attorney who suffered a heart attack sought this same kind of death benefit from the State Employees' Retirement System on the theory that the fatal attack was brought on by emotional stress and anxiety caused by his courtroom work in the employ of the State. In the *Odell* case, the applicant urged that the

Comptroller had erred in applying a stricter meaning to the word " accident " in the State Retirement System Law than is applied by the courts in this same word in the Workmen's Compensation Law.  The Appellate Division in the *Odell* case, however, pointed out that the Employees' Retirement System statute itself (Civil Service Law, § 85, subd. b) says that a Workmen's Compensation Board determination on the same facts is not binding on the Comptroller in passing on a claim such as this.  In that *Odell* opinion the Appellate Division referred to *Matter of McCadden* v. *Moore* (276 App. Div. 490, affd. 301 N. Y. 760) as being a supposed authority for the application by the Comptroller in these cases of a more restricted meaning of the word " accident " than the meaning commonly applied in workmen's compensation cases.  The substance of the Appellate Division's decision in the present case was, following the same court's *Odell* decision (which we later affirmed without passing on the particular point), that the Comptroller was within his rights in holding as fact that the death of this petitioner's husband was not " the natural and proximate result of an accident sustained in the performance of duty " in the State service (Civil Service Law, § 81, subd. a).  The Appellate Division granted leave to appeal to this court, presumably to tender us the question of law as to applicable standards of proof in these Retirement System accidental death claims where a heart failure is involved.

But it is impossible for us on this appeal to give a complete answer to the question of law discussed in the briefs since, for some reason not completely clear, there is no medical testimony whatever in this record.  In the workmen's compensation heart cases, of which we have had so many, there is usually no question but that the deceased workman underwent strain and exertion in the course of his duties.  Ordinarily, too, in such workmen's compensation cases there is no dispute but that claimant suffered a heart attack while at work or soon afterwards.  The question in those cases is usually as to whether the exertion and strain of the work caused the heart attack so as to permit a finding of industrial accident.  It is obviously impossible, given the other facts, to make such a causality finding, or to refuse it, without medical opinion proof.  As Larson says in his " Workmen's Compensation Law " the basic prob-

lem is medical causality (Vol. 1, § 38.83). The nexus between the work strain and the heart failure cannot be assumed, any more than the trier of the facts can assume that there was no such connection. Consequently, in every workmen's compensation heart case we have ever seen there was opinion testimony of causation. Whether or not that opinion testimony was directly controverted, it was for the trier of the facts to say whether or not he adopted the conclusion of the expert who testified for claimant. And there is, as we shall show, no essential difference between the proof requirements of workmen's compensation fatal heart claims and similar claims against the Retirement Fund. But this present record can be read — and in fairness should be read — as containing a ruling by the deputy comptroller that he would not take and did not need medical testimony but would decide the question of accident or no solely on the description already in the record of what decedent had been doing at the time he suffered the alleged strain. Colloquy at the end of the hearing contains a statement by counsel for claimant that he was resting on the testimony already taken, but the rest of what he said at that point makes it plain that he was putting before the deputy comptroller, perhaps not very scientifically, his contention that he was entitled to offer, also, medical testimony of causation. The Comptroller, nevertheless, rejected the testimony and denied the claim.

While a claim of an " accident " consisting of heart injury from work strain cannot be sustained without medical testimony it is, of course, possible, theoretically at least, that a finding of " no accident " could be made without such testimony. If the only testimony as to the work done showed that there was no particular strain or exertion, then, regardless of medical testimony and with or without it, the trier of the facts could, we suppose, say that ordinary, uneventful, placid routine work could not result in an " accidental " injury to a worker's heart within any of the statutes or cases (see 1 Larson on Workmen's Compensation, §§ 38.64, 38.83). But there had been put into this record testimony of unusually strenuous working conditions and so there should have been an opportunity for claimant to demonstrate by opinion testimony, if she could, that this strain and exertion caused the heart injury.

Clearly there was adequate proof here of strenuous outdoor physical work by this forty-five-year-old engineer. In March, 1951, a contractor for a new road in the Bear Mountain area notified the State Engineer that the contractor was moving into a certain area where the State's survey work had not yet been done and where it was necessary that this survey be made before the contractor's work should disturb the terrain. Thus it became important that the surveying be done immediately and a survey team was assigned, made up of three junior civil engineers, including this decedent, and three other persons. The operation consisted of driving stakes by the use of sledge hammers and then taking and recording measurements, etc. Decedent was not taking notes but was, with the others, driving the stakes. The ground was icy in places with snow and, in other places, mud on top of ice, and the slope was " very, very steep " in both directions from the road center so workers had to climb steeply up and make their way steeply down. Those slopes were at a forty-five-degree angle and were covered with boulders, stumps and brush. The work had been postponed in the hope of better weather conditions and had been put off as long as possible but finally had to be done on that particular day. One of the witnesses said that conditions were the most rugged that he had ever seen for such work. Claimant offered before the deputy comptroller to show that earlier staking work done by these people had been on flat ground, but the hearing officer refused to accept this testimony. At 11:00 A.M. decedent came down the slope and complained to the person in charge of the party that he (decedent) could not work any more on the slope because he had pains in his chest, tightness and shortness of breath, saying, probably facetiously, that he was getting too fat for such work. The man in charge then changed places with decedent, letting the latter take notes while the man in charge did decedent's work for the rest of the day. At 2:00 o'clock the next morning decedent complained of pains in his chest and shoulder and a doctor was summoned but when the doctor arrived at 2:30 A.M. decedent had died from an acute coronary thrombosis.

Petitioner tells us that this is a test case brought to examine into the statement or remark of the Appellate Division in *Matter of Odell* v. *McGovern* (283 App. Div. 585, 587, *supra*) that " a

different social philosophy '' from that of the Workmen's Compensation Law has been expressed by the Legislature in the State Employees' Retirement System statutes. In our *Per Curiam* opinion in the *Odell* case (308 N. Y. 678, 680, *supra*), we said that we found it unnecessary to decide whether there was such a difference between the two statutory systems or to decide whether the Comptroller may require more convincing evidence of an accident than is required under the Workmen's Compensation Law. In *Matter of Slattery* v. *Board of Estimate & Apportionment* (271 N. Y. 346) decided in 1936, and in *Matter of Nash* v. *Brooks* (276 N. Y. 75) decided in 1937, this court had held, at least in effect, that Workmen's Compensation Board determinations of accidental injury were binding on the medical board of the State Retirement System. Soon thereafter, however, the Legislature amended what was then section 67 of the Civil Service Law to provide that workmen's compensation decisions should not be binding on the Comptroller or the medical board in proceedings concerning accidental benefits under the Retirement System. A possibly stronger declaration to the same effect is now found in subdivision b of section 85 of the Civil Service Law. Thus, we see that while this court at one time indicated that the Comptroller should follow the workmen's compensation finding of accidental injury, the Legislature thereafter made it plain that the Comptroller, in determining that factual question, may do so independently of any prior decision of the Workmen's Compensation Board. Of course, it is unfortunate and anomalous that on the same evidence two different State administrative bodies should make contrary determinations of fact, but the statutes, by denying conclusive effect in Retirement System cases to Compensation Board findings of accidental causation, permit such discordant results. The Comptroller is free to make his own independent factual determination on the proof as he sees it. But no statute authorizes him to reject competent proof or to make rules of law, as distinguished from case-by-case findings of fact. How much and what kind of evidence is needed to support a fact finding that a death is '' the natural and proximate result of an accident sustained in the performance of duty '' (Civil Service Law, § 81) is a question of law. When the proof has been taken, the Comptroller, if questions of credibility appear or if conflict-

ing inferences are available, may perform the traditional duties of a trier of fact. He cannot change the law as to the meaning of the word "accident".

This court held in *Matter of Slattery* v. *Board of Estimate & Apportionment* (271 N. Y. 346, 350, *supra*) that there is "no substantial difference" between "accidental injuries" (Workmen's Compensation Law, § 2) and injuries which are "the natural and proximate result of an accident" (Civil Service Law, § 81). True, the Legislature afterwards decreed that the Compensation Board's holding of accident causation should not bind the Comptroller, but that statutory denial of *res judicata* left intact the holding that there is "substantial identity of subject-matter" (*Slattery* opinion, *supra*, p. 351) and that the issue as to accidental causation is the same under both statutes. Now, there can no longer be any doubt as to the applicable law of accidental causation in heart cases under the Workmen's Compensation Law. Such fatal heart failures may be held "accidental, if the employee, by a miscalculation of his own strength, inadvertently hastened his own death by exertion that caused the final breakdown" (1 Larson on Workmen's Compensation, § 38.83, p. 566). Whether exertion in employment followed by heart failure adds up to an accident under these rules is ordinarily a question of ultimate fact. To set up such a question we need proof of the work done and of the physical aftermath, but we then must look for another element: medical causation. When we have direct testimony of the first two observable facts, we seek causation in the opinion evidence of medical witnesses. When all that proof has been assembled, then "Whether a particular event was an industrial accident is to be determined, not by any legal definition, but by the common-sense viewpoint of the average man" (*Matter of Masse* v. *Robinson Co.*, 301 N. Y. 34, 37). In applying those ideas to the present case, we are not forcing this claim into a workmen's compensation mold, or stretching the coverage of a so-called "Masse rule". That the word "accident" is incapable of complete definition but is to be tested as to meaning by common speech and common understanding has been recognized in our courts and other courts for a long time (*Mutual Accident Assn.* v. *Barry*, 131 U. S. 100, 121; *Bird* v. *St. Paul Fire & Marine Ins. Co.*, 224 N. Y. 47, 51; *Lewis* v. *Ocean Accident & Guar. Corp.*, 224

N. Y. 18, 21). The *Masse* decision (*supra*) restated and reapplied that test as to accidental heart injuries in industry. Nor did the *Masse* opinion say anything new when it stated (p. 37) that " A heart injury such as coronary occlusion or thrombosis when brought on by overexertion or strain in the course of daily work " is an accidental injury. Similar holdings abound in accident insurance cases (see *Kleinman* v. *Metropolitan Life Ins. Co.*, 298 N. Y. 759; *Burr* v. *Commercial Travelers Mut. Accident Assn.*, 295 N. Y. 294; see 166 A. L. R. 469 *et seq.*).

I should make it clear that I disagree with nothing in Judge FULD's concurring opinion.

The **order** appealed from should be reversed, with costs in this court and in the Appellate Division, and the matter remitted to the State Comptroller for further proceedings not inconsistent with this opinion.

FULD, J. (concurring). In the disposition of the appeal, on the exceedingly narrow ground that the assertedly proffered medical evidence should have been received by the Comptroller for its possible bearing on causality, I concur.

In so doing, however, I would not have my vote construed as agreement with the contention advanced by petitioner that the Workmen's Compensation Board's finding of accident is in any way binding or conclusive on the Comptroller in determining whether accidental death benefits should be paid to petitioner under the Civil Service Law. (See, e.g., *Matter of McCadden* v. *Moore,* 301 N. Y. 760.) In other words, the court's remission of the present matter to the Comptroller does not mean that that official must find that petitioner's husband sustained an " accident " within the sense of section 81 of the Civil Service Law or that his death was the natural or proximate result of such an accident. If different inferences may reasonably be drawn from the evidence adduced before him, the Comptroller may find, for whatever bearing it may have on the ultimate issue, that there was or was not unusual extra exertion and strain sufficient to have caused the coronary thrombosis; that there was or was not an accident; and, if there was an accident, that it was or was not the cause of death.

The Comptroller may not, of course, make a finding or render a determination completely unsupported by evidence, but, on

the other hand, if his findings and conclusions do find support in the record, the courts have no alternative but to accept them, and that is so even though such a course might, as in the case now before us — just as in *Matter of McCadden* v. *Moore* (*supra*, 301 N. Y. 760) — lead to a result at odds with that reached by the Workmen's Compensation Board. While that may be unfortunate, the fact is, as everyone recognizes, it was plainly contemplated by, and is the necessary consequence of, the amendment passed by the legislature to overcome the effect of our decisions in *Matter of Slattery* v. *Board of Estimate & Apportionment* (271 N. Y. 346) and *Matter of Nash* v. *Brooks* (276 N. Y. 75).

CONWAY, Ch. J., concurs with DESMOND, J.; FULD, J., concurs for reversal in a separate opinion in which FROESSEL, VAN VOORHIS and BURKE, JJ., concur; DYE, J., taking no part.

Order reversed, with costs in this court and in the Appellate Division, and matter remitted to the State Comptroller for further proceedings.