**Mary Jane Keeler Quesnel v. Michael J. Raleigh and Thomas Walsh, Administrator Estate of Bruce M. Costello**

[258 A.2d 840]

No. 79-68

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed October 7, 1969

*Gerard F. Trudeau,* Middlebury, for plaintiff.

*Ryan, Smith & Carbine,* Rutland, for defendants.

**Holden, C.J.** The plaintiff, Mary Keeler, now Quesnel, was a passenger in a Volkswagen sedan, apparently the guest of the owner and operator, Bruce Costello. She was injured when the Costello car collided with a vehicle that had been parked in a driveway off Vermont Route 53 in Forestdale by the defendant Raleigh. The plaintiff alleged the rear of the defendant's parked vehicle extended into the highway, interfering and impeding the flow of traffic moving south on Route 53. The accident occurred on the evening of August 7, 1966. The operator of the Volkswagen was killed. Mrs. Quesnel joined the representative of the deceased operator Costello and the operator of the parked vehicle in an action to recover for the personal injuries she sustained in the accident.

The claim against the decedent's estate was compromised before trial. The plaintiff received $9,500 in exchange for covenant not to sue the Costello estate. Her complaint against Raleigh went to trial by jury and resulted in a verdict of $1,500 against the remaining defendant.

This appeal by the plaintiff challenges the adequacy of the damages awarded her. Included in the main question of damages is a further claim that the verdict was prejudiced by the erroneous admission of evidence of the percentage of alcohol contained in the deceased operator's blood.

In considering the validity of the verdict, we are called upon to consider the evidence in an aspect favorable to the amount of damage found by the jury and approved by the trial court. *Banker* v. *Dodge & Hemmings,* 126 Vt. 534, 537, 237 A.2d 121; *Jackson* v. *Rogers,* 120 Vt. 138, 150, 134 A.2d 620. In any event, the plaintiff's injuries were serious and the defendant called no witnesses to oppose the medical evidence presented in her behalf.

The accident occurred during the plaintiff's summer vacation, preceding her last year in college. She was then engaged as a playground director in the town of Middlebury. On weekends she had further employment as a swimming instructor and lifeguard. Her return to college was delayed briefly and she was graduated the following June. At the time of trial she was employed as a mathematics teacher in grades seven and eight of Middlebury Union High School.

The plaintiff sustained a crushing blow to the central area of her face, a wound in the forehead and a fractured ankle. She was hospitalized over a three week period. After initial treatment at the Rutland Hospital she was later transferred to Burlington for further medical treatment and surgery.

The fracture of the middle face extended into the root of the nose, incorporating the inner walls of the eyeball socket. The fracturing involved the upper skull, although apparently there was no neurological impairment. The plaintiff's upper teeth were chipped and became discolored as a result of the accident. They were finally extracted and replaced by a denture.

The shape of the plaintiff's face was altered by her injuries and resulted in some change in her personality. Her plastic surgeon, Dr. Barney, testified that there has been "good, reasonable healing—with reasonable alignment." Facial numbness is minimal and the nerves in the area have recovered completely. The witness also stated that on recovery, the residual facial scarring is quite minimal and relatively insignificant.

Up to the time of the accident the plaintiff was a healthy and active young lady. She was athletically inclined and participated in sports. Since this misfortune she tires easily, requires a special work schedule and is susceptible to infectious colds.

The plaintiff also sustained injury to her eyes which resulted in the blocking of the tear ducts and caused the eyes to be vulnerable to infection. This injury will be permanent unless alleviated by corrective surgery. At time of trial such surgery had not been recommended. Her vision at that time was 20-20.

The total medical and hospital expenses incurred by the plaintiff, as a result of her injuries, to the time of trial was $3,752.17. She lost earnings in the amount of $204. The combined special damages were $3,956.17. Her life expectancy at the time of trial was 47 and a fraction years.

Contending the verdict to be grossly inadequate, the plaintiff requested the trial court to increase the award to $50,000. In the alternative, the plaintiff moved the court to increase the amount of the verdict to such sum as it "deems advisable in its sole discretion so as to adequately and justly compensate" the plaintiff for her injuries. The motion presented a further

alternative by way of a request for a new trial limited to the issue of damages. All phases of that motion were denied.

Beyond assigning error to the lower court's refusal to increase the verdict, the plaintiff asks the Supreme Court to increase the damages to the proper amount. Neither the motion to the trial court nor the request made here for *additur* purport to invoke the consent of the defendant to such a change in the verdict.

■ ■ When damages are liquidated and capable of correction by accurate measurement within fixed rules of law, an error in the verdict can and should be remedied either in the trial court or on appeal. The verdict in question does not have that capability. The error claimed is in the general award for pain and suffering and permanent physical impairment. These uncertain elements of damage in the verdict are not subject to correction without the consent of the party to be adversely affected by the change. *Town of Stockbridge* v. *State Highway Board*, 125 Vt. 366, 372, 216 A.2d 44; *Pettengill* v. *Kelton*, 124 Vt. 472, 475, 207 A.2d 245.

■ Perhaps the trial court could have imposed an *additur* directing the verdict to be set aside unless the increment was accepted by the defendant. *O'Connor* v. *Papertsian*, 309 N.Y. 456, 131 N.E.2d 883, 51 A.L.R.2d 206, 211; *Fisch* v. *Manger*, 24 N.J. 66, 130 A.2d 815, 818. But see, *Dimick* v. *Schiedt*, 293 U.S. 474, 482, 55 S.Ct. 296, 79 L.Ed.2d 603, 95 A.L.R. 1150. But that is not the question before us. The motion presented did not invoke the lower court's discretion in this fashion. In the course of appellate review we will not substitute our judgment for that of the jury—nor our discretion for that entrusted to the trial court. *Mullett* v. *Milkey*, 113 Vt. 42, 45, 29 A.2d 806.

We turn to the third aspect of the plaintiff's motion to set the verdict aside and order a new trial on the question of damages only. The request was stated on the principal ground "(t)hat the verdict is for insufficient damages, and as such is against the evidence and the weight of the evidence, contrary to the evidence and contrary to law, this because of the nature, extent and permanency of Plaintiff's injuries and her life expectancy of forty seven (47) plus years."

The court instructed the jury that if they found the defendant liable, the amount of $9,500, which she received from the Costello estate, should be deducted from whatever amount they found to be her total damage and a verdict awarded for the difference. This instruction is consistent with the general rule opposing double recovery against joint tort feasors. *Ramsey* v. *Camp,* 254, N.C. 443, 94 A.L.R.2d 348, 350 and annotation at 360 *et seq.*; 25 C.J.S. Damages § 98(2); 22 Am.Jur.2d Damages, § 206. There was no objection to the instruction.

■ The question is whether the court's approval of the verdict which was awarded by the jury as an increment to the prior compromise, allowing total compensation of $11,000, exceeded the limits of judicial discretion. To be sure, the verdict is not generous. But the question is not how the appellate court, given the opportunity, would have assessed the plaintiff's damage. It is whether the jury could reasonably have done so on the evidence before it. And we will not interfere unless it appears that the jury's determination is so small that it plainly indicates the award was the product of prejudice or other misguidance which undermines its validity as a verdict. *Cenate* v. *Hunter,* 115 Vt. 402, 404, 62 A.2d 645; *Dusckiewicz* v. *Carter,* 115 Vt. 122, 128, 52 A.2d 788; *Mullett* v. *Milkey, supra,* 113 Vt. at 45, 29 A.2d 806; *Rule* v. *Johnson,* 104 Vt. 486, 491, 162 A. 383.

There is no claim that the jury failed to heed the court's instructions as to damages, as in the *Cenate* case. It is said in the plaintiff's brief, however, that the trial court's reception of evidence of the alcoholic content of the deceased operator's blood caused the jury to render an inadequate verdict.

■ It is the law of this jurisdiction that if a person voluntarily rides in an automobile operated by an intoxicated driver, knowing of the operator's condition, he is precluded from recovering from the operator or a third person when the operator's intoxication is found to be one of the proximate causes of the accident. *Packard* v. *Quesnel,* 112 Vt. 175, 180, 22 A.2d 164. Compare *Abel, Admr.* v. *Salebra,* 115 Vt. 336, 341, 61 A.2d 605. The plaintiff testified that Costello was drinking beer when she spoke with him at noontime on the day of the accident. She had some beer with him at eight o'clock that

evening, shortly before the collision. In these circumstances the state of the operator's intoxication was material to the question of the plaintiff's right to a recovery.

The identification of the subject at the time of the post-mortem extraction of his blood is sufficiently established in the record to sustain the trial court's preliminary ruling in this regard. The same is true of the accuracy of the testing procedure followed in the state laboratories where the specimens were analyzed. *State* v. *Auger*, 124 Vt. 50, 57, 196 A.2d 562.

The appellant attacks the ruling as erroneous in law for the reason that there was no consent by the subject to the blood sample as required by 23 V.S.A. § 1190 and related sections. The statute referred to is in our motor vehicle law. It fixes the procedure for presenting the option of consent or refusal to an operator suspected of driving under the influence of intoxicants. The statute and the presumptions it creates relate to criminal prosecution for the offense of driving under the influence of intoxicating liquor. 23 V.S.A. § 1189. See also *Bungardeanu* v. *England* (D.C.App.) 219 A.2d 104, 16 A.L.R.3d 739, and annotation.

■ The motor vehicle law has no application to the evidence in question. It appears from the record that a blood sample, upon which the defendant's evidence was given, was lawfully extracted from the deceased in the course of an examination and autopsy performed under authority of 18 V.S.A. § 5205. Such investigation has legal sanction when a person dies from violence or casualty.

The statutory presumptions of intoxication, arising in criminal prosecutions under the motor vehicle law, from certain blood alcohol levels were not referred to in the evidence. There was no reference to the subject in the court's charge to the jury.

The defendant's evidence, presented by way of the state pathologist, was that the sample of blood taken from the deceased operator had a blood alcohol content of .24 per cent. In the opinion of this witness "any individual within this percentage range is in a state of acute intoxication."

■ ■ Despite this proof, the jury resolved the issue of liability in the plaintiff's favor. And she makes no claim that this aspect of the verdict was compromised by inadequate

damages. To the contrary, the plaintiff adheres to the claim that the issue of liability was justly determined and limits her motion to set the verdict aside to damages only. Had the verdict been infected by compromise, a motion, thus restricted, would have been properly denied. *Wilford* v. *Salvucci,* 117 Vt. 495, 501, 95 A.2d 37. In any event, we have examined the record to ascertain whether indications of compromise are present. A verdict that is compromised in the sense that it was reached by the surrender of conscientious convictions on the part of the jury is not acceptable as the basis for a valid judgment. *Parizo* v. *Wilson,* 101 Vt. 514, 523, 144 A. 856. Yet in actions for personal injuries, pain, suffering and permanent impairment are elements of damage which, of necessity, are entrusted to the discretionary judgment of the jury. Independent of compromise, a verdict for substantially less than the damage sought may reflect a rational rejection of some items and approval of others.

The instructions of the trial court were explicit in limiting the evidence of Costello's intoxication to the issue of the plaintiff's contributory negligence. And the jury was reminded that although it was admitted that the deceased was negligent, his fault could not be imputed to the plaintiff. There is no indication in the record presented here that the jury improperly used this evidence to cut down the amount of the plaintiff's recovery. We must assume the jury heeded the court's instructions in dealing with this evidence. *Lewis* v. *Gagne,* 123 Vt. 217, 219, 185 A.2d 468.

Deducting the special damages from the total award, it is apparent that the jury allowed compensation for pain, suffering, loss of future earnings and the permanency of the injuries sustained in the amount of $7,000. The range of the jury's function in this area is broad.

■ The record presents no indication the award was prejudiced by compromise. Although inconsiderable, the verdict is not below permissible limits of reason. And the printed transcript of the trial proceedings does not persuade us, against the closer view of the court below, that the jury was misled by passion or prejudice. Since no abuse of discretion has been established, the trial court's refusal to set the verdict aside, as to damages, is sustained. *Dashnow* v. *Myers,* 121

Vt. 273, 283, 155 A.2d 859; *Rule* v. *Johnson, supra,* 104 Vt. at 493, 162 A. 383.

*Judgment affirmed.*