### Walter E. Brunelle v. Bernard W. Coffey

[264 A.2d 782]

No. 26-68

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed April 7, 1970

*Lisman & Lisman,* Burlington, for Plaintiff.

*Wick, Dinse & Allen,* Burlington, for Defendant.

**Keyser, J.** This case, here on appeal by the plaintiff, raises two questions for review—whether the court erroneously (1)

refused to charge as requested by the plaintiff "that plaintiff is entitled to a verdict in this cause" and (2) denied plaintiff's motions to set aside the verdict and grant a new trial based on the claim that the verdict was grossly inadequate.

The plaintiff seeks to recover damages for alleged personal injuries and property damage caused by a rear end collision with his car by defendant's vehicle. At the close of the evidence and before arguments, the plaintiff filed written requests to charge, one of which reads: "that the court instruct the jury that the plaintiff is entitled to a verdict in this cause". The plaintiff did not move for a directed verdict on liability either at the close of plaintiff's case or at the close of all the evidence. The court submitted the case to the jury with negligence and contributory negligence as issues for their determination. The plaintiff claims that this was error in view of all of the evidence in the case and that this opened the door for the jury to bring in a compromise verdict.

█ In support of this exception the plaintiff cites in his brief the facts as shown by the evidence surrounding the occurrence of the accident. He then argues that the conduct of the defendant as shown by such facts was negligence and entitled the plaintiff to a directed verdict, citing *Scrizzi* v. *Baraw*, 127 Vt. 315, 248 A.2d 725. From this it would appear that the plaintiff views his request to charge that he is "entitled to a verdict" as a motion for a directed verdict. The form, nature and purpose of a motion for a directed verdict is entirely different from a request to charge and one cannot be substituted for the other to effectuate the same result.

In any event, the jury returned a verdict for the plaintiff which resolved the issue of negligence and contributory negligence in his favor and established the defendant's liability. The plaintiff received all he could expect to get in this respect either by a motion for a directed verdict or by his request to charge.

██ The plaintiff does not point out in what manner he was prejudiced except to state that the action of the court opened the door for a compromise verdict. Prejudice must be established by the party claiming it. *Lewis* v. *Gagne*, 123 Vt. 217, 220, 185 A.2d 468. None is shown here. Furthermore, it cannot be assumed that the jury did not abide by the trial

court's instructions and returned a compromise verdict. *Id.* at page 219. This exception lacks support in the record and is without merit.

Plaintiff's second assignment of error is that the court abused its discretion in refusing to grant his motion to set aside the verdict and grant a new trial. The plaintiff stated five grounds in his motion, all of which relate to the amount of damages, namely, (1) the verdict is not supported by the evidence; (2) disregard of the court's instructions by the jury; (3) verdict was a result of compromise; (4) verdict was the result of passion, prejudice and bias; and (5) verdict was grossly inadequate.

The plaintiff's brief deals primarily with the first and last mentioned issues, it being his claim that the jury returned a verdict for less than the plaintiff's pecuniary loss with nothing added for pain and suffering.

■■ In treating these questions we must view the evidence in the light most favorable to the defendant since the weight of the evidence is against the party who challenges it. We must determine whether the jury could reasonably have found its verdict for damages on the evidence before it. *Quesnel* v. *Raleigh,* 128 Vt. 95, 258 A.2d 840. On review of the ruling of the trial court denying such a motion and upholding the jury verdict, this Court must indulge every reasonable presumption consistent with the record in favor of the ruling below. *Rutland Sash & Door Co.* v. *Gleason,* 98 Vt. 215, 225, 126 A.2d 577.

The accident happened in Winooski on December 21, 1963. Plaintiff's automobile was stopped at an intersection waiting to make a left turn. It was snowing some and the road was wet in spots. The defendant in approaching plaintiff's vehicle from the rear couldn't stop and collided with its rear corner. The force of the collision moved plaintiff's car forward about three feet. The defendant had a talk with the plaintiff in the latter's car but plaintiff said nothing about being injured. The defendant testified that it didn't seem to him "like he was injured." After the police investigation plaintiff drove his car to his store in Winooski.

That afternoon the plaintiff, bacause of pain in his neck, consulted Doctor Louis Thabault, who specialized in general sur-

gery. The accident did not result in overnight hospitalization of the plaintiff but x-rays were taken on December 23, 1963. The x-ray pictures showed no fractures of the ribs and normal thoracic spine but did show areas of arthritis in the cervical spine. This arthritic condition pre-existed the accident. Plaintiff's injury arising from the accident was described as a cervical thoracic sprain and was in the same area of the arthritis.

Up to the date of the trial a period of $4\frac{1}{2}$ years had elapsed since the accident. During this time plaintiff saw the doctor at his office every week for the first six months after the accident, every other week for the next six months, and after that once a month. For at least during the previous year before trial, the treatment consisted simply of "medication, encouragement and evaluation."

The evidence shows that in this period of $4\frac{1}{2}$ years the plaintiff was continually making complaints to his doctor of headaches and discomfort in his neck. He testified that he was "not ever free of pain during his waking hours." In addition plaintiff made other complaints to his doctor relating to his physical condition—foggy vision, stiffness of his back, cold and sore throat, nosebleeds, numbness in his arms and hands, swelling of his right elbow, respiratory infection and abdominal pain. Plaintiff was sent to a Dr. Cunningham for an eye examination but there is no evidence of the result. In July, 1964, he was sent to Dr. J. E. Simpson, an orthopedic surgeon, for an examination and in May, 1965, he was sent to Dr. H. L. Martin, a neurologist, for an examination. Neither of these medical experts testified nor was the result of their examinations made known.

Plaintiff began experiencing abdominal pain in October, 1964. X-rays were taken beginning on November 27, 1964, and as a result the presence of a gastric ulcer was discovered. Doctor Thabault put his patient on a dietary basis which treatment continued for about one year. As to the cause of the ulcer the doctor testified that "I would fall in the category of all other doctors of not being able to say definitely what the cause of ulcers is." There is no evidence that plaintiff's ulcer was the direct result of the accident. All of the items for expenses for ulcer treatment, including doctor's services, x-rays and medicines, are included as a part of the several

bills which plaintiff argues totals his pecuniary loss of $1663.25.

The defendant produced Dr. P. H. Davis, an expert witness in orthopedic surgery. He physically examined the plaintiff on February 5, 1964, took his history and examined the x-ray pictures of the cervical area. He testified that in his opinion the plaintiff had "evidently strained his neck, that he had some degenerative—rather mild degenerative changes—arthritic-like changes in his spine" before the accident and that as far as he could determine the plaintiff was not "disabled from doing his normal daily tasks." The doctor further testified that if plaintiff's symptoms were continuing, the prime cause would be all the arthritic changes on the cervical spine—his neck, rather than as a direct result of the injury. He concluded that plaintiff's injury was not a serious injury as such, and should quiet down in the near future.

Dr. Thabault and Dr. Davis each diagnosed plaintiff's injury as a cervical thoracic sprain. They also agreed that the arthritic condition in that area pre-existed the date of the accident. Dr. Thabault, however, in disagreement with Dr. Davis, testified that the various symptoms complained of by the plaintiff, excepting the ulcer, were due to the accident.

The defendant objected to the admission of Plaintiff's Exhibits 11 and 13 which were for medicines purchased from one pharmacy during the period from January 3, 1964 to December 2, 1964 for $124.65 and from another pharmacy during the period from December 16, 1964 thru April, 1968 for $304.10. The basis of the objection was because no competent medical testimony was ever presented connecting these with the accident. Dr. Thabault testified only that the numerous slips making up the exhibit were receipts for medication. The plaintiff testified that the receipts (Exhibits 11 and 13) were all the result of prescriptions for medicines given to him by his doctor since the accident. The items included medicinal expense into April, 1968, but there is a lack of medical testimony connecting all of such expense with the accident. Moreover, the testimony discloses that the expense of medicines included the purchase of rauwolfia for blood pressure and milltown and anacin for nerves and anxiety.

The jury had for their consideration evidence that the hospital bill of $280.00 included charges of $230.00 since Novem-

ber 27, 1964. These charges were for x-rays due to the gastric ulcer and for physical therapy which was undertaken nearly three years after the accident. The evidence also shows that Dr. Thabault's total bill of $448.00 was for services to February, 1968, and included treatment of all of plaintiff's ailments.

 On the record before us, it clearly appears that a decided conflict in the evidence existed on the issue of damages. There were various factors present that apparently had a controlling and dominate influence on the mind of the jurors in arriving at their verdict. Most important of these was their apparent belief in and reliance on the testimony of Dr. Davis. On this conflict of testimony it was for the jury to decide what evidence they would rely upon and what they would cast aside in reaching their decision. The weight of the evidence and the witnesses' credibility are for the jury, and, on appeal, all conflicts are to be resolved against the excepting party. *Stanley* v. *Roy,* 125 Vt. 136, 137–138, 211 A.2d 243. Conflicts in evidence always present a factual question for the jury's determination and, here, the question of damages was wholly for the jury.

 General verdicts should be construed to give them effect, if that can reasonably be done. 53 Am.Jur., Trial, § 1053. And, ordinarily, the court will not interfere with the jury's province to determine the amount of damages where the evidence as to damages is conflicting. 66 C.J.S., New Trial, § 75(a). We held in *Quesnel* v. *Raleigh, supra,* that "(W)e will not interfere unless it appears that the jury's determination is so small that it plainly indicates the award was the product of prejudice or other misguidance which undermines its validity as a verdict."

What the Supreme Judicial Court of Maine said in a *per curiam* decision in *Gustin* v. *Asskov,* 129 Me. 494, 151 A. 443, 444 is equally applicable here—"This is one of a class of cases (personal injury) in which it is difficult to establish the damages. One jury might fix the damages at one sum, and another at a different sum, and yet both act honestly. In such a case, the verdict is not disturbable."

■ ■ The question is whether the jury could reasonably assess plaintiff's damages as they did on the evidence before it. *Quesnel* v. *Raleigh, supra*. Upon careful review of the record we are persuaded that it fairly and reasonably tended to justify the amounts of damages set forth in the verdict reached by the jury. We must assume the jury followed the court's instructions in dealing with this evidence, *Lewis* v. *Gagne, supra*, at page 219. Considering the special damages recoverable under the evidence, it is apparent that the jury allowed some compensation for pain and suffering.

We find no indication in the record that the jury acted as a result of passion, prejudice, or other improper motive, or that the decision of the jury was a compromise verdict as stated by the plaintiff. The court's refusal to set the verdict aside and grant a new trial is sustained, no abuse of discretion having been established. *Quesnel* v. *Raleigh, supra*.

*Judgment affirmed.*