### Romeo Turgeon and Marie Turgeon v. Jean Claude Schneider, Eleanor Schneider and Claude Andre Schneider

[553 A.2d 548]

No. 86-517

Present: **Peck and Dooley, JJ., and Barney, C.J. (Ret.), Keyser, J. (Ret.) and Springer, D.J. (Ret.), Specially Assigned**

Opinion Filed August 19, 1988

*Peter F. Langrock* and *Anna E. Saxman* of *Langrock Sperry Parker & Wool*, Middlebury, for Plaintiffs-Appellees.

*David G. Miller*, St. Albans, for Defendants-Appellants.

**Springer, D.J.** (Ret.), Specially Assigned. In this case a jury found defendants liable for waste of plaintiffs' farm, awarded damages, and denied defendants' counterclaims for alleged breach of warranties relating to the water system and a Harvestore silo. The trial judge denied defendants' alternative motions for judgment notwithstanding the verdict or a new trial. Defendants appeal from the verdict and the denial of their motions. We affirm.

In 1983, due to plaintiff Romeo Turgeon's ill health, plaintiffs put their Alburg farm up for sale, asking $400,000 for the real estate, cattle, machinery and equipment. Defendants, who were farming in Iberville, Quebec, responded. After talking with plaintiffs and observing the conditions of the farm and its operation, defendants attempted to obtain financing for the full price of the farm, but were unable to do so. Taking this into account, on November 29, 1983, the parties entered into a written agreement under which plaintiffs sold to defendants the cattle, machinery and two silos for $125,000, and leased the real estate to defendants with an option to purchase it for $215,000 at the end of the term of one year, the term to begin January 1, 1984.

On January 1, 1984, defendants moved onto the farm and took over its operation. Soon afterward defendants began changing the nature of the operation of the farm by culling the milking herd, bringing in new cows from their Iberville farm, changing the milking system, and altering the real estate in various ways to accommodate these changes. The changes in the milking system increased the need for water, the source of which was the village water system. Plaintiffs made the necessary arrangements, and a new water line was installed.

In September, 1984, defendants notified plaintiffs by letter that they would not exercise their option to purchase the farm. On January 11, 1985, plaintiffs filed a complaint seeking the removal of defendants from the premises. On January 16, 1985, defendants left the farm, taking the cattle, machinery and equipment

that they had purchased and delivering the keys to the farm to their own attorney, who was instructed to deliver the keys to plaintiffs' attorney.

Plaintiffs returned to their farm four or five days later, and alleged that they only learned of defendants' departure from neighbors. They found that, due to freezing weather, forty drinking bowls in the barn were broken and water lines had burst, that a vacuum pump, milk lines and a grain bin top were missing, and that ten windows and sashes were broken and Blue Seal grain bags had been stapled over them. Later they found that 175 acres of alfalfa had been overgrazed and badly damaged.

During a three-day trial both parties presented extensive evidence in connection with plaintiffs' claims for waste and defendants' claim for breach of warranties as to the silo and the adequacy of the water system. The jury returned a verdict for plaintiffs on damage to the windows - $400, grain bin - $400, water bowls and pipes - $1,750, vacuum pump and milk lines - $1,200, and alfalfa fields - $21,250. The jury rejected defendants' counterclaims, denying liability.

On appeal defendants make several claims: (1) there was not sufficient evidence to support the verdict; (2) the verdict was excessive; (3) testimony of one of defendants' expert witnesses was improperly and prejudicially excluded; (4) another of defendants' expert witnesses was prejudicially excluded from the category of expert; and (5) there were errors in the jury instructions on warranties and waste.

## I. SUFFICIENCY OF EVIDENCE TO SUPPORT THE VERDICT

Defendants appeal the denial of their motion for judgment notwithstanding the verdict, arguing that there was insufficient evidence presented at trial to support the jury verdict. The parties agree, correctly, that on appellate review of a motion for judgment notwithstanding the verdict the standard of review is whether, taking the evidence in the light most favorable to the prevailing party and excluding any modifying evidence, there is any evidence which fairly and reasonably tends to support the jury verdict. *Westchester Fire Ins. Co.* v. *Deuso*, 146 Vt. 424, 426, 505 A.2d 666, 667 (1985); *Lowe y. Beaty*, 145 Vt. 215, 216, 485 A.2d 1255, 1256 (1984).

With regard to all the waste claims, except the damage to the alfalfa fields, defendants argue that because plaintiffs did not return to the farm until four or five days after defendants vacated it, the jury had to speculate on the cause of the injuries and that, even viewed in the light most favorable to plaintiffs, the evidence was nothing more than opinion and speculation of the witnesses. In essence, defendants are arguing that plaintiffs must prove that there were no other possible causes for the damages before there can be liability, and that circumstantial evidence cannot be used to prove liability. This, however, is the wrong standard of proof. Plaintiffs must only prove that it was more probable than not that defendants were responsible for the damage. See *Shields* v. *Vermont Mutual Fire Insurance Co.*, 102 Vt. 224, 238, 147 A. 352, 358 (1929). Furthermore, circumstantial evidence may be used to establish facts where the circumstances themselves are proven. Cf. *Westchester Fire Ins. Co.*, 146 Vt. at 426, 428-29, 505 A.2d at 667, 669.

Plaintiffs introduced sufficient evidence on each item to convince the jury that defendants were responsible for the damages. Considering the evidence that grain bags had been tacked up in place of the broken windows, that defendants vacated the farm without taking proper precautions against freezing water in the pipe lines and water bowls, that there was intentional dismantling and removal by defendants of other equipment without reinstallation of the original equipment, it is clear that the jury had sufficient evidence on which to find liability as to all the items damaged in and around the barn.

Where there is conflicting evidence on what occurred, it is up to the jury to weigh the evidence and the relative credibility of the witnesses. "The weight of the evidence and the witnesses' credibility are for the jury, and, on appeal, all conflicts are to be resolved against the excepting party." *Brunelle* v. *Coffey*, 128 Vt. 367, 373, 264 A.2d 782, 785 (1970). The jury believed plaintiffs' witnesses over the defendants,' and their findings will not be disturbed by this Court. Additionally, the defendants' claim that the damage could have occurred during the period between the time they vacated and when plaintiffs returned does not support their argument that the evidence on liability was purely speculative. Defendants left the farm without notifying plaintiffs; they simply gave the keys to the farm to their attorney. If anything, the jury

could have considered these facts as further evidence of defendants' neglect of plaintiffs' premises.

Defendants claim that plaintiffs' testimony concerning the alfalfa fields was untenable, and that defendants' evidence clearly outweighed the evidence presented by plaintiffs on this issue. Defendants contend that the jury found for plaintiffs on the damage to the alfalfa fields because of passion, prejudice, or some misconception, and a new trial must be granted on this basis. See *McKenna* v. *May*, 134 Vt. 145, 148, 353 A.2d 359, 361 (1976). However, even though there was conflicting evidence as to the cause and extent of the injury done to the alfalfa fields, the evidence was such that the jury could find that the fields had been well established, were producing two or more cuttings of good quality hay or green chop each year and were being properly maintained before defendants took over the farm, and that defendants, by their own admission, pastured those fields at a time of year when severe long-term injury would result from overgrazing and that overgrazing in fact occurred.

Taking the evidence in the light most favorable to plaintiffs, as we must, there is little doubt that there was sufficient evidence to satisfy their burden of proof. "Where each side of an issue is fairly supported by the evidence . . . the trial court ought not to usurp the prime function of the jury as the trier of the facts." *Grow* v. *Wolcott*, 123 Vt. 490, 497-98, 194 A.2d 403, 408 (1963) (Hulburd, C.J., dissenting). "The ruling of the court must stand if there is credible evidence to support it, even though there may be substantial evidence to the contrary." *Lockwood* v. *Bougher*, 145 Vt. 329, 331, 488 A.2d 754, 755 (1985). The trial court was correct in denying defendants' motions for judgment notwithstanding the verdict and for a new trial.

## II. EXCESSIVE VERDICT

■ Defendants attack the jury award as excessive on several items. To overturn a jury award, an appellant must demonstrate that the verdict was "entirely excessive," while viewing the evidence in the light most favorable to the jury's finding. *Banker* v. *Dodge*, 126 Vt. 534, 537, 237 A.2d 121, 124 (1967). "[T]he question is not how the appellate court, given the opportunity, would have assessed the plaintiff's damage. It is whether the jury could reasonably have done so on the evidence before it." *Quesnel* v.

*Raleigh*, 128 Vt. 95, 100, 258 A.2d 840, 843 (1969). We are not convinced that the jury's assessment of plaintiffs' damage was unreasonable given the evidence.

Defendants first claim that the jury award for damage done to the water bowls and lines was excessive because the award was determined by the price for these items new, and plaintiffs were thereby put in a better position than they were prior to the alleged damage. As defendants correctly point out, the measure for damages to personal property is "fair market value before the injury less fair market value after the injury." *Wells* v. *Village of Orleans, Inc.*, 132 Vt. 216, 223, 315 A.2d 463, 468 (1974). However, the record does not indicate whether plaintiffs replaced the bowls and lines with new ones or used ones. Mr. Turgeon simply indicated that it cost him $2,000 to replace this equipment. The jury awarded $1,750. This is obviously not excessive as they could have awarded $2,000 on the evidence presented. Furthermore, the court's charge to the jury on the issue of the measure of damages in this case was simply "cost of repair." Admittedly the charge is ambiguous, but defendants raised no objection to this charge and are therefore precluded from raising it here for the first time on appeal. *Chittenden Trust Co.* v. *Marshall*, 146 Vt. 543, 552, 507 A.2d 965, 971 (1986).

Defendants raise the same claim with regard to the vacuum pump and milk lines. However, according to Mr. Turgeon's testimony, he did replace the pump with a used pump, which cost him $500. He further testified that it cost him approximately $700 to replace the missing lines. Defendants contend that the lines were not missing, but merely had to be reinstalled. Apparently, the jury was swayed more by plaintiffs' evidence than by defendants' on this disputed point. Therefore, the jury award for these items is not excessive.

Finally, defendants claim the jury miscalculated the damages done to the alfalfa fields because it did not take into account depreciation due to the life span of the alfalfa seeding. The jury calculated the damage done to the fields by looking at normal yield, taking the reseeding, or lack thereof, into account. Defendants did not present any evidence on the depreciated cost of reseeding the fields. They are barred from raising this issue for the first time on appeal. See *Rassman* v. *American Fidelity Co.*, 142 Vt. 623, 625, 460 A.2d 461, 462 (1983). The jury awarded plaintiffs the cost of reseeding the fields and the cost of the crop plaintiffs

lost the year defendants moved off the farm. According to Mr. Turgeon's testimony, the cost of reseeding came to $12,500; the cost of the lost crop was $26,000. Damages, therefore, equaled $38,500. The jury awarded $21,250 for damages done to the alfalfa fields. Obviously, the award was not excessive given the evidence.

Viewing the evidence in the light most favorable to the jury award, *Banker*, 126 Vt. at 537, 237 A.2d at 124, the award was "within reasonable limits based upon the evidence before it." *Lemnah* v. *American Breeders Service, Inc.*, 144 Vt. 568, 580, 482 A.2d 700, 707 (1984); see *Quesnel*, 128 Vt. at 102, 258 A.2d at 845. Defendants failed to demonstrate that the jury verdict was "entirely excessive"; therefore, the trial court was correct in denying defendants' motions for judgment notwithstanding the verdict or new trial as to the amount of damages awarded.

## III. EXPERT TESTIMONY EXCLUDED

Defendants claim that the trial court improperly and prejudicially excluded certain testimony of their expert witness, Dr. Leonard Bull. Dr. Bull was called by defendants and qualified as an expert in ruminant nutrition. The doctor's testimony was to be relevant to defendants' counterclaim for breach of warranty by plaintiffs in the sale of a Harvestore silo. The silo was alleged to be defective, causing spoilage of the haylage that was stored in it. Plaintiffs objected to a hypothetical question as to the probable cause of the black color of the haylage claimed to be spoiled. They complained that the hypothetical was based on facts not in evidence and that the issue was not material to the case. The court sustained the objection, adding that it was not going to permit the witness to give an opinion on what caused the silage to be black unless he actually saw the silage. Later, the court permitted defendants' attorney to ask the witness what caused the silage to become black. The witness gave his opinion that it was due to exposure to air, and that the exposure could have been due to the silo not being covered, the entrapment of air in the silo in the process of storing the haylage or to leakage in the silo.

Vermont Rules of Evidence permit an expert to give an opinion without personal knowledge of the facts so long as he is made aware of the facts before or during trial. V.R.E. 703. However, an expert's opinion may not be based on mere speculation.

*In re New England Telephone & Telegraph Co.*, 135 Vt. 527, 536, 382 A.2d 826, 833 (1977). Opinion based on speculation is irrelevant, and is not admissible. *Id.*; V.R.E. 401 and 402. In any event, even though the court was wrong in its reason for excluding the hypothetical question, the ruling was correct as to relevancy, there being no evidence in the case of a refilling of the silo in 1985; and the opinion evidence came in eventually anyway. There is no reversible error here.

## IV. EXCLUSION FROM THE CATEGORY OF EXPERT

Defendants claim that the trial court improperly and prejudicially excluded their witness David Redman from the list of expert witnesses discussed by the court in its charge. Mr. Redman worked with the Farmer's Home Administration as a county supervisor, and was approached by defendants for financing to purchase plaintiffs' farm. Defendants objected to his name being excluded from the category of expert witnesses, and the court countered that the reason it did not include Mr. Redman's name was because his opinion was never sought or given on any issue in the case. He did, however, testify at length on what he observed to be the condition of the farm prior to it being leased to defendants.

The question of competency of an expert witness is within the trial court's discretion and will not be disturbed on appeal unless clearly erroneous. *Northern Terminals, Inc., v. Smith Grocery & Variety, Inc.*, 138 Vt. 389, 392, 418 A.2d 22, 24 (1980). Mr. Redman's entire testimony was that of a fact witness. There was no opinion testimony offered. Clearly the court acted within its discretion in not listing Mr. Redman as an expert. Moreover, if it was erroneous for the court to exclude Mr. Redman's name from the list of experts, the defendants have not demonstrated any possible prejudice to their case. Here, the education and background of the witness had been made known to the jury, and the court properly charged the jury regarding the qualifications of experts and the credibility and weight to be given their testimony. The court's decision to leave Mr. Redman's name out of the list, if error, was not reversible error under the circumstances of this case. See V.R.C.P. 61.

## V. ERRORS IN JURY INSTRUCTIONS

Defendants challenge the trial court's instructions to the jury with regard to warranties and waste. They first assert that the trial court should have instructed the jury that prior knowledge by plaintiffs of defects in the silo was not essential to establish a breach of warranty. They also argue that the court erroneously told the jury that it needed to find that a warranty existed on the silo when that was not a jury question as plaintiffs admitted in response to defendants' counterclaim that they had made a warranty. The third claim of error in the charge was that, in defining waste and discussing evidence about the milking system, the court instructed the jury to find waste as to those items, and that prejudice resulted because the jury had no opportunity to decide if waste had in fact taken place.

■ A party claiming error in jury instructions must establish not only that they were erroneous but that prejudice resulted. *Corti* v. *Lussier*, 140 Vt. 421, 424, 438 A.2d 1114, 1116 (1981). It is not error if the court does not make every conceivable comment that could be made on the issues and evidence. How far the court must elaborate lies within the sound exercise of its discretion. *Currier* v. *Letourneau*, 135 Vt. 196, 204, 373 A.2d 521, 527 (1977). Furthermore, the charges must be considered as a whole and not piecemeal. If, " 'as a whole, it breathes the true spirit and doctrine of the law, and there is no fair ground to say that the jury has been misled by it, it ought to stand.' " *Choiniere* v. *Sulikowski*, 126 Vt. 274, 277, 229 A.2d 305, 307 (1967) (quoting *In re Moxley's Will*, 103 Vt. 100, 114, 152 A. 713, 718 (1930)).

Examination of the charge in this case reveals that the court clearly and fully explained the law on both express and implied warranties and their application to defendants' claims of breach of warranties of the water system and the silo. As for the first issue raised by defendants that the court should have instructed the jury that prior knowledge by plaintiffs of defects in the silo was not essential to establish a breach of warranty, we find no error. The court did not tell the jury, nor imply, that knowledge of the claimed defects is required to establish a breach of warranty. Because the court correctly outlined the elements for both express and implied warranties, where any comment on knowledge of the alleged defects is not a part, see, e.g., 9A V.S.A. §§ 2-313 and 2-314(1), the court was not required to elaborate any fur-

ther in its charge. See *L'Ecuyer* v. *State Highway Board*, 124 Vt. 462, 466-67, 207 A.2d 260, 263-64 (1965). With regard to the claim that the jury was required to find that a warranty was made on the silo, twice the court called the jury's attention to Mr. Turgeon's testimony that he had made express warranties, and described them. When viewed as a whole, the charge on warranties was well within the sound discretion of the court; neither error nor prejudice has been shown here.

As to the instructions relating to waste, the part claimed to be erroneous is found in the middle of a discussion of all of the items claimed to have been damaged or missing. The court referred to Mr. Turgeon's testimony that when he returned to the farm soon after defendants vacated, he found the vacuum pump and lines were gone and he had to replace them. The court instructed the jury that while defendants were in lawful possession of the farm, they had a duty to take care of the farm and the equipment therein and return it to plaintiffs in substantially the same condition as when their occupancy began, reasonable wear and tear excepted. The court further instructed the jury that if it found damage, they must also, in order to find defendants liable, find that it was caused by defendants either by destruction, misuse, alteration or neglect. The definition of waste was correct, see generally 78 Am. Jur. 2d *Waste* § 1, and, when viewed as a whole, we cannot say that the jury was not given the opportunity to decide whether defendants committed waste to the milking system. Therefore, defendants fail to demonstrate that the instructions were in error and prejudicial to their case.

*Affirmed.*

*Defendants' writ of attachment on plaintiffs' property on the basis of their counterclaims is dissolved forthwith.*