659 A.2d 1137 (1995)
In re B.S., Juvenile.
No. 94-036.
Supreme Court of Vermont.
March 31, 1995.
*1139 Robert Appel, Defender Gen., and Anna Saxman, Appellate Defender, Montpelier, for appellant.
Jeffrey L. Amestoy, Atty. Gen., Montpelier, and Michael O. Duane, Asst. Atty. Gen., Waterbury, for appellee SRS.
Charles S. Martin of Martin & Paolini, Barre, for appellee juvenile.
O. Whitman Smith of Kochman and Smith, Burlington, for amicus curiae Champlain Drug and Alcohol Services.
Before ALLEN, C.J., and GIBSON, DOOLEY, MORSE and JOHNSON, JJ.
DOOLEY, Justice.
Appellant P.S., mother of juvenile B.S., appeals an order of the Chittenden Family Court terminating her parental rights. Appellant claims that the family court erroneously ordered disclosure of her confidential communications to an alcohol counselor, and the counselor's treatment records, in violation of federal law; and that the court's conclusion that she could not resume her parenting duties within a reasonable time was error. She is joined in her claim of violation of federal law by amicus curiae Champlain Drug and Alcohol Services (CDAS), which runs the alcohol abuse treatment program in which she participated. Although we conclude that it was error to require disclosure of the communications and records, we affirm the termination of appellant's parental rights.
On April 15, 1992, six-month-old B.S. was placed in the custody of the Vermont Department of Social and Rehabilitation Services (SRS) because on two occasions appellant left the child with neighbors and returned to retrieve him several hours late and in an intoxicated condition. The family court later found B.S. to be a child in need of care and supervision (CHINS), and shortly thereafter, SRS filed a petition to terminate appellant's parental rights. During the termination proceedings, SRS issued a subpoena to CDAS to compel production of appellant's treatment records, and to compel the testimony of her alcohol counselor. CDAS moved to quash the subpoena, asserting that federal law forbids disclosure of alcohol counseling records and the testimony of the counselor without the patient's consent, except in limited circumstances. The family court's order compelling the disclosure of appellant's records and the testimony of her alcohol counselor prompted this appeal.
Appellant's appeal is based primarily on federal law, which prohibits the disclosure of alcohol and drug abuse treatment records and confidential communications made by patients, where the treatment is "directly or indirectly assisted by any department or agency of the United States." 42 U.S.C. § 290dd-2(a) (1994); see id. § 290dd-2[1]; 42 C.F.R. §§ 2.1-2.67 (1993). It is undisputed that CDAS receives funds from an agency of the federal government to support its alcohol abuse treatment program and that appellant was enrolled in this program. Thus, the disclosure restrictions of federal law were applicable to this case.
The purpose of the federal statute is to encourage patients to seek treatment for substance abuse by assuring them that their privacy will not be compromised. See Whyte v. Connecticut Mutual Life Ins. Co., 818 F.2d 1005, 1010 (1st Cir.1987) ("confidentiality is necessary to ensure successful alcoholism treatment. Without guarantees of confidentiality, *1140 many individuals with alcohol problems would be reluctant to participate fully in alcoholism programs."); Commissioner of Social Services v. David R.S., 55 N.Y.2d 588, 436 N.E.2d 451, 454, 451 N.Y.S.2d 1, 4 (1982) ("Broad interpretation furthers the objectives of the Federal statute. . . by not chilling the willingness or discouraging the readiness of individuals to come to facilities operated under the statute."). The basic confidentiality rule is set forth by statute, 42 U.S.C. § 290dd-2. The statute contains a broad authorization for rule-making. See id. § 290dd-2(g). Pursuant to this authorization, the Secretary of Health and Human Services has adopted comprehensive regulations. See 42 C.F.R. §§ 2.1-2.67.
Two aspects of the confidentiality requirements are relevant to this appeal. The first involves the patient records maintained by CDAS on appellant.[2] These records are not subject to subpoena unless the court finds good cause for disclosure. See 42 U.S.C. § 290dd-2(b)(2)(C); 42 C.F.R. § 2.64(d). Appellant and amicus argue that the court failed to follow proper procedures in determining whether good cause was present, and erred in finding good cause. Thus, appellant and amicus assert the court erred in requiring the records to be produced and used in the proceeding.
The regulations describe the procedures and criteria that a court must employ before authorizing a disclosure of patient records. See 42 C.F.R. § 2.64 (1993). First, the party seeking the information must file an application for a production order with the court, using a fictitious name to identify the patient. See id. § 2.64(a). The court must provide adequate notice to the patient and the person possessing the records at issue, id. § 2.64(b)(1), and must give an opportunity for these persons to respond either in writing or at a hearing. Id. § 2.64(b)(2). Normally, this means the court must conduct a hearing on the application. All of these procedures must be conducted in a manner that protects the patient's privacy. Id. § 2.64(a), (c).
A disclosure order may be entered only if the court determines that good cause exists. See 42 U.S.C. § 290dd-2(b)(2)(C); 42 C.F.R. § 2.64(d). This determination is to be made only upon a finding that alternative means of obtaining the information are not available, and that the interest in disclosure outweighs "the potential injury to the patient, the physician-patient relationship and the treatment services." 42 C.F.R. § 2.64(d)(2). Even if disclosure is authorized, the court must limit the order's scope of disclosure to minimize the impact on the patient's privacy. Id. § 2.64(e).
It is undisputed that SRS failed to use the procedure in the regulations. It began by issuing a subpoena to the CDAS alcohol counselor instead of to appellant. As such, the hearing came on CDAS's motion to quash.[3] As discussed below, the court did not view the records in camera before ruling on whether disclosure would be ordered.
The court's good cause determination rests on two findings: (1) SRS "has no other means of obtaining the information contained in the . . . treatment files" because appellant has not consented to disclosure; and (2) the "public interest in production is great, and far exceeds the minor threat of embarrassment to" appellant. In making the latter finding, the court was heavily influenced by the fact that the juvenile hearing in which the files would be used is not a public proceeding.
The record production order was "limited to those parts of the records . . . which are essential to determine whether [appellant's] parental rights should be terminated" and required the file to be sealed to limit disclosure. In fact, the entire file was produced by the counselor, and no attempt was made to *1141 redact extraneous matter to comply with the order. It is unclear whether SRS or others used the records.[4] At one point during his testimony, the counselor did use the records to refresh his recollection.
We agree with appellant and amicus that the family court misapplied the good cause requirements in two important respects. First, the court could find good cause for production of the patient records only if an alternative means of obtaining the information contained within them was not available. Good cause cannot be demonstrated when production of the records is merely cumulative. See, e.g., United States v. Smith, 789 F.2d 196, 205-06 (3d Cir.1986) (disclosure request denied because other sources of competent evidence available); Bell v. State, 385 So.2d 78, 81 (Ala.Ct.Crim. App.1980); David R.S., 436 N.E.2d at 455, 451 N.Y.S.2d at 5 (disclosure order reversed because other proof readily available through witness testimony). The family court misconstrued the regulation as allowing disclosure if the party seeking the records had no alternative method of obtaining the records, as opposed to the information within the records.
This was more than a technical error. By the time the court issued the order requiring production of the records, extensive testimony about appellant's alcohol abuse had come from her SRS social worker and probation officer. The testimony of the SRS worker was a substitute for much of what was in the records because appellant had waived confidentiality with respect to the SRS worker, and the CDAS counselor and the SRS worker spoke frequently about appellant's diagnosis and treatment.[5] The SRS worker recounted the substance of many of these conversations. Although we cannot make a definitive assessment because neither the trial court nor this Court has seen the records in dispute, we consider it highly likely that the records were cumulative and their disclosure was unnecessary.
Second, the court failed to consider the potential injury to the physician-patient relationship and to treatment services in balancing the relevant interests. See 42 C.F.R. § 2.64(d)(2); David R.S., 436 N.E.2d at 455-56, 451 N.Y.S.2d at 5-6. The court looked solely at the embarrassment to appellant from disclosure in light of the nonpublic nature of juvenile proceedings. See 33 V.S.A. § 5523(c). Although we agree that it is relevant that juvenile proceedings are not public, the court's inquiry was far too narrow and omitted any consideration of appellant's willingness to participate in treatment if she knew that her diagnosis and treatment information could be used to terminate her parental rights. Again, this was not a theoretical issue because appellant had expressed concern about the confidentiality of the CDAS information and had revoked her consent to make it available to others.
We also agree with appellant and amicus that the procedures employed by the court were inadequate to ensure a thorough good cause determination. If the court was concerned that the information in the records was unobtainable elsewhere, it should have first conducted an in camera review of the records to determine whether they revealed any unique and relevant information. Indeed, we are uncertain how a court can make *1142 a good cause determination without first examining the records to see what they contain. See State v. Harger, 804 S.W.2d 35, 37-38 (Mo.Ct.App.1991) (trial court must make in camera inspection of records); Jane H. v. Rothe, 488 N.W.2d 879, 883 (N.D.1992) (good cause determination requires in camera inspection to assess information contained in records).
Finally, we agree that the family court's order was not properly limited to protect against unnecessary disclosure pursuant to § 2.64(e). On its face, the order appeared to comply with § 2.64(e): disclosure was limited to the parties in the proceeding, the case file was sealed, and disclosure was limited to only those parts of appellant's records and communications which were essential to determine whether her parental rights should be terminated. The court failed, however, to evaluate the records to determine what information within them complied with the order, and the entirety of the records were produced in response to the subpoena. Apparently, the court intended to edit the records if they were offered in evidence, and this never occurred. The court's approach gave SRS access to the records, however, in violation of the confidentiality restrictions. The regulations clearly intend that any redaction occurs earlier, in defining what records must be produced in response to the subpoena, to avoid unnecessary breaches of confidentiality.
The other part of the disclosure restrictions applicable to this case cover "confidential communications" where "made by a patient to a program in the course of diagnosis, treatment, or referral for treatment." 42 C.F.R. § 2.63(a). These restrictions apply both to confidential communications found in the CDAS records on appellant, as well as confidential communications to which the CDAS counselor might testify.[6] Such communications may not be disclosed unless they fit within at least one of three exceptions. See id. Only one of the exceptions arguably applies here; it allows disclosure if "necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties." Id. § 2.63(a)(1). The family court concluded that this exception applies because this proceeding involves child abuse and neglect.
We are unable to concur with the family court's interpretation of the regulations. There was no showing that disclosure was necessary to protect B.S. against "an existing threat to life or of serious bodily injury."[7] The reference to child abuse and neglect proceedings is clearly limited to instances where such threat exists. This threat may have been present earlier in the juvenile proceedings, but custody by P.S. was no longer in issue. Even if the threat were present, there is no indication that disclosure of P.S.'s confidential communications to CDAS was necessary to obviate it.
In its opinion, the court relied in part on § 2.12(c)(6), which provides that the disclosure restrictions do not apply to state laws that mandate reporting of suspected child abuse; the regulation also provides, however, that the restrictions continue to apply throughout civil or criminal proceedings which may arise out of the reported abuse.[8] *1143 We do not find this regulatory provision helpful; it merely clarifies that mandatory reporting of child abuse is not barred by the confidentiality provisions, and it expressly provides that the disclosure restrictions continue to apply in any case growing out of the original mandatory reporting exception. If anything, this additional section of the regulations supports the conclusion we have reached.
Having concluded that the family court's disclosure order was improperly entered, we turn now to the impact this error had on the termination proceedings. Appellant argues that the nature of the court's error warrants an automatic reversal.
The erroneous admission of evidence is grounds for reversal only if a substantial right of the party is affected. See V.R.C.P. 61 (error in admission of evidence is grounds for new hearing only if "refusal to take such action appears to the court inconsistent with substantial justice") (applicable in juvenile proceedings by V.R.F.P. 2(a)). We applied this standard in In re R.M., 150 Vt. 59, 65, 549 A.2d 1050, 1054 (1988), where the family court erred in admitting and relying on certain hearsay evidence. Noting that the burden "is on the excepting party to demonstrate that the error resulted in prejudice," id., we considered the effect of the improper testimony on the court's decision. We concluded that reversal was appropriate only if the findings of the court, apart from the findings based on the improper evidence, did not support the court's conclusions. Id. at 66, 549 A.2d at 1055; see also In re M.B., 158 Vt. 63, 69-70, 605 A.2d 515, 518-19 (1992) (no reversible error where trial court's conclusion based on testimony properly in evidence). We have applied a similar analysis to unsupported findings of fact in juvenile proceedings. See In re A.F., 160 Vt. 175, 178-79, 624 A.2d 867, 869 (1993); In re C.M., 157 Vt. 100, 103, 595 A.2d 293, 294 (1991).
Appellant has made no showing here that the family court's use of information it erroneously obtained from the counselor was prejudicial. Because the counselor was in regular contact with the SRS worker, and the SRS worker testified to these conversations without objection, there was little additional relevant evidence supplied by the counselor. To the extent the records were used, we cannot find that they added any relevant evidence.
A review of the alcohol counselor's testimony also shows a sensitivity to unnecessary disclosure of appellant's confidential communications. The counselor opined that more was behind appellant's behavior than alcohol abuse. When asked to explain what other conditions were involved, the counselor declined to answer, and the SRS attorney did not pursue the matter. Thus, to the extent appellant had made disclosures to the counselor additional to those shown in the testimony of the SRS worker or the probation officer, these disclosures did not get into evidence.
Without the testimony of the alcohol counselor, there was sufficient evidence for the court to conclude that appellant's parental rights should be terminated. In its final order, the court made almost forty separate findings in support of its decision, and few of these reveal any reliance on the improperly obtained CDAS information. The vast majority of the findings regarding the nature of appellant's alcoholism are grounded in testimony from others. For example, appellant's probation officer provided evidence relating to appellant's frequent relapses and the criminal behavior that resulted from these episodes. In addition, the SRS social worker testified that appellant's alcoholism caused the agency to remove another son from her custody almost ten years earlier.
Indeed, the court's key finding regarding appellant's alcoholism was that she needed to attend a residential treatment program of six months to one year in duration, and this duration was inconsistent with a conclusion that resumption of parental responsibilities could occur within a reasonable period of *1144 time. Significantly, the alcohol counselor's testimony on this point favored appellant. He testified that he did not recommend long-term care, but instead recommended a short-term community-based approach to treatment. Because this testimony benefitted appellant, it can not be considered unfairly prejudicial. See United States v. Donovan, 984 F.2d 507, 511 (1st Cir.1993) (evidentiary rule that court erroneously used to admit evidence was more restrictive than appropriate rule; hence, error favored defendant and was not prejudicial), judgment vacated on other grounds, ___ U.S. ___, 114 S.Ct. 873, 127 L.Ed.2d 70 (1994).
The court also made findings concerning appellant's apparent apathy towards her relationship with B.S. For example, the court found that appellant chose to visit B.S. once instead of four times per week, and that she regularly missed about one visit per month. In addition, the court found that appellant occasionally left the visits with B.S. early because she was frustrated that the child did not acknowledge her as his mother.
Based on all of this evidence, exclusive of appellant's alcohol counselor's testimony and her treatment records, the family court's conclusion that appellant could not resume her parenting duties within a reasonable time is fully supported. This determination also answers appellant's argument that the family court erred in reaching this conclusion. Accordingly, the court's decision to terminate her parental rights was not premature.
Affirmed.
MORSE, Justice, concurring.
The Court, in my opinion, blames the family court unnecessarily for perceived errors that did not "affect the substantial rights of the parties." V.R.C.P. 61 (harmless error). Ordinarily, we would not go to such lengths to criticize a trial judge when no harm was done.
The focus of the Court's opinion is wholly academic. While an order issued denying the mother's motion to quash the subpoena for the patient records, the records were not ultimately disclosed and thus were not introduced into evidence. This Court concludes the records' "disclosure was unnecessary," assuming a disclosure even though the records were not actually disclosed. The Court even assumes that the SRS attorney had read them, when in fact he "assert[ed] that he never read the records." In fact, the records were ordered sealed, the disclosure of any records or communications prohibited upon further showing of need, and if disclosure were to be allowed, it would be only to the parties and their counsel. Thus, today's decision is an advisory opinion.
This Court may be forgiven for issuing dictum when the advice may help settle future controversy. In this case, however, I believe most of the dicta is ill-advised.
The Court finds "it highly likely that the records were cumulative," thereby not satisfying a "good cause" element for production. Since the contents of the records are not of record, this is a surprising finding, unnecessary to decide this case, and puts the family court in error before it had a chance to review the records and decide whether they were cumulative or not. The same may be said of the second "good cause" element of balancing the relevant interests of the public and the patient. It was premature for the court to review the records to balance the relevant interests because the records were not yet offered in evidence. I also believe that the confidential nature of juvenile proceedings is a relevant consideration, if, and when, balancing of these interests are undertaken.
The Court faults the family court for not conducting an in camera review of the records and would require in camera review in every case. Yet, federal regulations make in camera review discretionary in both civil and criminal cases. The trial court did not abuse its discretion here because the need to review the records never arose. It would have been a waste of judicial resources to do so. While it may have been wrong to allow disclosure to SRS as a party without an in camera inspection, it certainly was not error to permit counsel for either party to review the records. Counsel are officers of the court subject to the same ethical restraints with regard to in camera inspection as the court, and counsel's inspection is necessary *1145 under the standards of adversarial due process to advocate what, if any, portion of the records should, or should not, be disclosed.
I also disagree with the Court's parsimonious reading of 42 C.F.R. § 2.63(a)(1) ("necessary to protect against an existing threat to life or of serious bodily injury, including circumstances which constitute suspected child abuse and neglect and verbal threats against third parties"). The Court interprets "existing threat" literally, that is, no "existing threat" is shown if the child is not in the threatening parent's custody at the moment. A "threat," however, does "exist" if it may be carried out at some time in the future. Under the Court's view, § 2.63(a)(1) would never be a ground for disclosure.
I would affirm in an opinion deleting the dicta.
NOTES
[1] The federal requirements were formerly set out in two separate statutes, one covering alcohol abuse treatment records and the other covering drug abuse treatment records. They were consolidated into the current 42 U.S.C. § 290dd-2, covering substance abuse, by Pub.L. No. 102-321, § 131, 106 Stat. 323, 368-70 (1992).
[2] This requirement relates to patient records, but not the confidential communications made by the patient to the program even if contained in the records. See 42 C.F.R. § 2.63(a). An earlier version of the regulations limited disclosure to objective data, to express a similar distinction. See 52 Fed.Reg. 21796, 21808 (June 9, 1987) (explaining 1987 amendments to regulations).
[3] Appellant and amicus have not argued that this deviation from the regulations is ground for relief on appeal. We agree. See In re Baby X, 97 Mich.App. 111, 293 N.W.2d 736, 741 (1980).
[4] The attorney for SRS, who was also present in the family court, asserts that he never read the records. The transcript indicates that the records were present in the court and were handled by the SRS attorney. They were not introduced into evidence. It is impossible to tell from the record whether the SRS attorney actually read any part of the records.
[5] SRS relied upon a waiver theory below, but the family court did not explicitly rule upon it, and SRS has not relied upon waiver in this Court. In making its waiver argument, SRS relied heavily upon In re M.M., 153 Vt. 102, 106, 569 A.2d 463, 465 (1989), in which this Court held that a parent waived her patient privilege by placing her mental health in issue in contesting termination of parental rights. Appellant and amicus argue that the theory of M.M., is not applicable to this privilege, and, in any event, appellant's consent for the disclosure of information was explicitly for purposes of treatment only. We do not have to evaluate these claims. We note, however, that the SRS worker testified to information provided by the alcohol counselor without objection and never received notice that the federal privilege bound him. See 42 C.F.R. §§ 2.12(d)(2)(iii), 2.32 (person who receives notice specified in regulation that information is privileged is bound by disclosure restrictions of regulations).
[6] The parties have assumed that this regulation restricts access to the testimony of the counselor, even if not based on the records. Although this assumption is logical to protect the confidentiality of the patient in the diagnosis and treatment process, we note that the statute relates only to records, 42 U.S.C. § 290dd-2(a), and the regulations appear to be inconsistent in their coverage, see 42 C.F.R. § 2.3(a) ("these regulations impose restrictions upon the disclosure and use of alcohol and drug abuse patient records").
[7] We have found one decision that appears to support the family court's interpretation of § 2.63(a), In re Romance M, 622 A.2d 1047, 1052 (Conn.Ct.App.1993), a termination of parental rights proceeding. This decision is explicitly based on the rationale that the regulation authorizes any disclosure "`necessary to protect against . . . child abuse and neglect.'" Id. This quotation of the regulation omits words that are critical to its meaning, undermining the court's interpretation. There is no other rationale in the decision, and we decline to follow it.
[8] The exact language of § 2.12(c)(6) is as follows:

Reports of suspected child abuse and neglect. The restrictions on disclosure and use in these regulations do not apply to the reporting under State law of incidents of suspected child abuse and neglect to the appropriate State or local authorities. However, the restrictions continue to apply to the original alcohol or drug abuse patient records maintained by the program including their disclosure and use for civil or criminal proceedings which may arise out of the report of suspected child abuse and neglect.
42 C.F.R. § 2.12(c)(6).