**Kelly R. Greene, et al. v. Michael R. Bell, M.D., Castleton Health Associates, Inc. and Rutland Regional Physicians' Group**

[762 A.2d 865]

No. 99-070

Present: **Amestoy, C.J., Dooley, Morse and Skoglund, JJ., and Toor, Supr. J., Specially Assigned**

Opinion Filed October 20, 2000

*Karl C. Anderson* of *Anderson & Eaton, P.C.*, Rutland, for Plaintiffs-Appellants.

*Karen S. Heald* of *Cleary Shahi Associates, P.C.*, Rutland, for Defendant-Appellee Bell.

*John D. Monahan, Jr.* of *Dinse, Knapp & McAndrew, P.C.*, Burlington, for Defendant-Appellee Castleton Health Associates, Inc.

**Skoglund, J.** Plaintiff Abby Greene, individually and on behalf of the estate of her deceased husband, Kelly Greene, and the couple's three minor children, appeals from a judgment based upon a jury verdict in favor of defendants Michael R. Bell, M.D. and his employer, Castleton Health Associates, Inc.[1] Plaintiff contends the court committed numerous evidentiary and instructional errors. We affirm.

In July of 1993, Kelly Greene visited the office of Dr. Bell, a family practice physician, to have a mole on his back examined and assessed. Precisely what transpired during that visit was the subject of vigorous dispute and conflicting evidence at trial. Dr. Bell testified that, after obtaining a history and examining Mr. Greene, he made the clinical assessment that the mole was either one of two types of benign lesions — seborrheic keratosis or compound nevus (nevus is a general term for a congenital growth on the skin), and, with Mr. Greene's concurrence, scheduled him for a follow-up visit for surgical removal of the mole. Dr. Bell disputed plaintiff's claim that he (Dr. Bell) had been informed the mole had recently changed in appearance, a warning sign for melanoma. Mr. Greene, in a videotaped deposition to preserve testimony, recalled that Dr. Bell indicated the mole was nothing to worry about, and that it could be removed if it became uncomfortable.

Mr. Greene did not return for the scheduled surgery. Nearly two years later, in April 1995, Mr. Greene made another appointment to have the mole examined, complaining that it was bothering him. Dr.

---

[1] Defendant Rutland Regional Physicians' Group was dismissed prior to trial by agreement of the parties.

Bell removed the mole and had it biopsied, which revealed an advanced malignant nodular melanoma. Despite subsequent surgery and treatment, the cancer continued to spread. Mr. Greene died of melanoma in November 1997.

Plaintiff, Mr. Greene's wife, subsequently filed suit on behalf of the estate and her three minor children, claiming that Dr. Bell had negligently failed to educate Mr. Greene about the risk factors for melanoma that were indicated during the July 1993 visit and the importance of surgical removal of the mole, and that but for Dr. Bell's negligence Mr. Greene would not have died. Following a week-long trial, in which numerous medical experts testified for each side, the jury returned a special verdict in favor of defendants, finding that Dr. Bell had not been negligent. The trial court denied a subsequent motion for judgment as a matter of law. This appeal followed.

## I.

Plaintiff first contends the trial court committed prejudicial error by precluding one of her experts, Dr. Sober, from explaining the risk factors present in Mr. Greene.

Our discovery rules permit one party to compel the other to "identify each person whom the other party expects to call as an expert witness at trial, to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions as to which the expert is expected to testify and a summary of the grounds for each opinion." V.R.C.P. 26(b)(4)(A)(i). A trial court has inherent authority to enforce the discovery requirements of V.R.C.P. 26 by excluding evidence, granting a continuance, or by taking other appropriate action. See *White Current Corp. v. Vermont Elec. Coop.*, 158 Vt. 216, 223, 609 A.2d 222, 226 (1992). Absent an abuse of discretion, a trial court's imposition of discovery sanctions will not be disturbed. See *id.*; see also *Agency of Natural Resources v. Glens Falls Ins. Co.*, 169 Vt. 426, 434, 736 A.2d 768, 773 (1999).

In response to interrogatories, plaintiff here disclosed that Dr. Sober was expected to testify about "causation in this particular case and the treatment of melanoma." More specifically, it was expected that he would state his opinion concerning Mr. Greene's chances of long-term survival if the mole had been removed in 1993; Dr. Sober would testify that, depending on certain factors, the odds of long-term survival ranged from 90% to no worse than 66%. At trial, however, plaintiff sought to use photographs of Mr. Greene's back, taken two to

three years after his examination by defendant, to elicit testimony from Dr. Sober concerning the number and type of moles that were probably present at the time of the examination, and the fact they were a risk factor for melanoma. The court excluded the testimony, ruling that it exceeded the scope of the subjects and opinions on which the expert was expected to testify as disclosed by plaintiff during pretrial discovery, and that defendants had not had the opportunity to prepare for these subjects.

■ The record amply supports the court's conclusion that the testimony sought to be introduced was outside the scope of the matters disclosed, and represented an unfair surprise to defendants. Although plaintiff alleges that there was no prejudice to defendants because they had delved into these areas during Dr. Sober's deposition, and that defendants themselves had opened the door to the subject during their cross-examination of Dr. Sober, the record does not support either claim. Accordingly, we discern no basis to conclude that the court abused its discretion in excluding the testimony.

## II.

Plaintiff next challenges the trial court's decision to exclude as irrelevant certain videotaped testimony of Dr. Anita Licata, who had examined and treated Mr. Greene during one visit in 1996. As with Dr. Sober, plaintiff sought to establish that Dr. Licata's observation of numerous atypical nevi established risk factors for melanoma that were present in 1993.

■ The trial court enjoys broad discretion in determining whether evidence is relevant, and will not be overruled absent an abuse of discretion. See *State v. Bernier*, 157 Vt. 265, 268, 597 A.2d 789, 791 (1991). Moreover, an erroneous evidentiary ruling is grounds for reversal only if it affects a substantial right of the party. See *In re B.S.*, 163 Vt. 445, 454, 659 A.2d 1137, 1143 (1995). The record here reveals that despite the court's ruling, plaintiff adduced evidence through her standard of care expert, Dr. Campbell, that dysplastic nevus syndrome — the presence of numerous moles — is a risk factor for melanoma, and that Mr. Greene had a family history of this syndrome; that Mr. Greene, according to his wife, had numerous moles on his back when he visited Dr. Bell in 1993; and that, as defendants' expert Dr. Plante acknowledged, Mr. Greene probably had clinically atypical moles in 1993 when he visited Dr. Bell, which represented a risk for melanoma. Photographs of Mr. Greene's back,

which plaintiff attempted to introduce through Dr. Licata, were also later admitted. Thus, even if the court erred in limiting Dr. Licata's testimony, similar evidence was otherwise presented at trial. Accordingly, we cannot conclude that the trial court's ruling constituted prejudicial error requiring reversal.

## III.

Plaintiff next contends the trial court erred in allowing defendants' expert, Dr. Spenser, to testify on issues relating to plaintiff's burden of proof. As noted, plaintiff's expert, Dr. Sober, testified about Mr. Greene's chances of survival if the mole had been removed in 1993. Dr. Spenser, a dermatologist, testified in response that statistical probabilities with regard to survivability are based upon patient populations as a whole, and cannot reliably be applied to any single individual. Plaintiff had sought to exclude Dr. Spenser's testimony on the ground that it would confuse the jury on the issue of causation, misleading them to believe that plaintiff must prove Mr. Greene was not within the percentage of the population who die from melanoma despite its early detection, and further suggesting that the standard of proof for expert medical evidence was somehow higher than the law required, i.e., a reasonable degree of medical certainty. See *Everett v. Town of Bristol*, 164 Vt. 638, 639, 674 A.2d 1275, 1277 (1996) (mem.) (expert testimony must meet standard of reasonable probability or reasonable degree of medical certainty). The court allowed the testimony, observing that it would subsequently instruct the jury on the appropriate burden of proof.

Plaintiff renews the claim on appeal that Dr. Spenser's testimony improperly suggested a different burden of proof than was required by law. We are not persuaded, however, that the testimony that survival-group statistics did not necessarily apply to Mr. Greene was likely to mislead or confuse the jury on plaintiff's burden. We also note that the court correctly instructed the jury on the applicable legal burdens of proof. See *Gallerani & Sons, Inc. v. State Highway Bd.*, 133 Vt. 485, 486, 346 A.2d 529, 530 (1975) (absent objection, we assume jury followed court's instructions). Accordingly, we discern no error in the admission of Dr. Spenser's testimony.[2]

---

[2] Plaintiff also claims in this regard that defense counsel improperly relied upon Dr. Spenser's testimony during closing argument. Plaintiff raised no objection to the argument at trial, and therefore waived the issue on appeal. See *Human Rights Comm'n v. LaBrie, Inc.*, 164 Vt. 237, 252, 668 A.2d 659, 670 (1995) (where specific

## IV.

Plaintiff next asserts that the court erred in denying her requests to charge the jury on "informed refusal" and "failure to refer to a specialist." The first proposed instruction would have informed the jury of the duty of a medical practitioner to apprise the patient not only of the procedure prescribed, but also of the risks involved in a decision not to undergo treatment. The trial court rejected the proposed instruction, noting that the negligence instructions adequately explained plaintiff's theory that defendants had negligently failed to remove the mole on Mr. Greene's back for a biopsy, and had negligently failed to educate Mr. Greene to monitor the mole for changes that would warrant future medical attention. The second proposed charge essentially instructed the jury to hold Dr. Bell to the standard of care of a dermatologist if they found that he should have referred Mr. Greene to such a specialist. The court denied the requested charge, again noting that it was subsumed within the general standard-of-care instructions.

"A party claiming error in jury instructions must establish not only that they were erroneous but that prejudice resulted." *Turgeon v. Schneider*, 150 Vt. 268, 276, 553 A.2d 548, 553 (1988). The court need not make every conceivable comment that could be made upon the issues and evidence; how far the court must elaborate lies within its sound discretion. See *id.* The adequacy of the instructions must be evaluated as a whole and not piecemeal. See *id.*

█ Assessed in the light of these standards, plaintiff's claim fails at the threshold; she has made no showing whatsoever as to how the court's refusal to give the proposed instructions resulted in prejudice. Furthermore, the court correctly ruled that the duties referred to in the proposed charges were otherwise subsumed within the general standard of care instructions, and that more specific instructions were unnecessary. Accordingly, we discern no error.

---

objection not raised before trial court, this Court will not address issue on appeal) . Plaintiff also asserts the court improperly restricted cross-examination of Dr. Spenser by not allowing plaintiff's counsel to ask Dr. Spenser which statistical group he personally would have preferred to be in. The court sustained an objection, noting that the question was argumentative. The court's ruling was clearly within the scope of its broad discretion in ruling on evidentiary issues. See *Quirion v. Forcier*, 161 Vt. 15, 21, 632 A.2d 365, 369 (1993).

## V.

Plaintiff contends the court erroneously allowed a defense witness, Dr. Donald Stanley, to testify as an expert witness on issues of causation and standard of care, although he had not been disclosed as an expert and his opinions had not been disclosed. Dr. Stanley, a pathologist employed by the Rutland Regional Medical Center, had initially reviewed and reported on the slides from the biopsy in April 1995 that resulted in the melanoma diagnosis. Dr. Stanley was disclosed only as a fact witness, and the court, in response to plaintiff's motion in limine, ruled that, as a fact witness, he could give opinion testimony only as to the characteristics of the pathology at the time he examined the biopsy slides in 1995, including whether it was malignant, pigmented, or hairy, but could not give opinions about its age, rate of growth, pigmentation in 1993, the standard of care, causation, or other matters outside the scope of his examination in 1995.

Dr. Stanley testified about his findings, and in particular about his pathology report which described a "nodular melanoma in pure vertical growth phase . . . arising in conjunction with an intradermal nevus." He was allowed, over objection, to define nodular melanoma, to explain what he meant by "arising in conjunction with an intradermal nevus," and to describe the nevus as hairy and nonpigmented. Plaintiff objected below, and argues on appeal, that Dr. Stanley's testimony constituted expert opinion evidence beyond the proper scope of a fact witness and the court's ruling. The record reveals, however, that the court repeatedly reminded the witness to describe and explain only what he had observed microscopically while examining the biopsy slides in 1995. The testimony did not exceed the scope of the court's ruling, or introduce a previously undisclosed theory of causation, as plaintiff claims. Accordingly, we discern no abuse of discretion. See *Quirion v. Forcier*, 161 Vt. 15, 21, 632 A.2d 365, 369 (1993) (we review trial court's evidentiary rulings only for abuse of discretion).[3]

---

[3] Plaintiff's additional claim that defense counsel improperly relied upon Dr. Stanley's testimony during closing argument was not raised below, and therefore is not cognizable on appeal. See *Human Rights Comm'n*, 164 Vt. at 252, 668 A.2d at 670 (where specific objection was not raised below, this Court will not address claim on appeal). Similarly, the claim that the testimony should have been excluded because Dr. Stanley had a fiduciary duty to Mr. Greene as his treating physician was not raised at trial, and therefore was waived as an issue on appeal. See *id.*

## VI.

Plaintiff next contends the court erred in precluding two witnesses, Thomas Moon, a friend of Mr. Greene's, and Mrs. Greene from testifying that Mr. Greene felt relieved after his examination by Dr. Bell. The court ruled that Moon could testify about what Mr. Greene said he was feeling, under the hearsay exception for then-existing mental or emotional condition, see V.R.E. 803(3), but could not characterize those feelings as "relieved." Later, the court again ruled that Mrs. Greene could testify about what Mr. Greene said he was feeling, but could not testify that Mr. Greene felt relieved, explaining that the testimony went too far in creating an inference about specific statements made by Dr. Bell during the office visit.

■ The trial court determines the admissibility of evidence at trial, and we will disturb its discretionary ruling only if that discretion has been abused. See *Quirion*, 161 Vt. at 21, 632 A.2d at 369. The erroneous admission or exclusion of evidence is grounds for reversal only if it resulted in prejudice affecting a substantial right of the party. See *In re B.S.*, 163 Vt. at 454, 659 A.2d at 1143. Although plaintiff contends that the trial court's ruling prevented her from rebutting Dr. Bell's version of the office visit, the record shows that Mr. Greene stated in his videotaped testimony that Dr. Bell specifically told him there was nothing to worry about. Mrs. Greene was also allowed to testify that Mr. Greene appeared to be "happy" after the office visit, and that she herself "felt relieved" after the office visit. Accordingly, the record does not support the claim that the court's ruling, regardless of its merits, precluded plaintiff from rebutting Dr. Bell's recollection of events.

## VII.

Plaintiff next contends the trial court erroneously limited cross-examination of a defense expert, Dr. Forcier, in two respects. Dr. Forcier testified that Mr. Greene's nodular melanoma had probably developed within months of the biopsy in April 1995, and that there were no clinical signs of melanoma at the time of Mr. Greene's appointment with Dr. Bell in July 1993. Plaintiff sought to impeach Dr. Forcier using an expert disclosure signed by defense counsel that identified Dr. Raymond Barnhill as an expert, and described Dr. Barnhill's opinion that nodular melanomas "usually have an indolent period of a number of years followed by a rapid growth phase." The court sustained a defense objection to the proposed use of the expert

disclosure form, ruling that even if the attorney's statements were admissible as an admission by a party opponent under V.R.E. 801(d)(2), they contained inadmissible hearsay statements by Dr. Barnhill.

Although plaintiff asserts that the court's ruling was in error, she makes no argument or showing as to how the alleged error was prejudicial. See *In re B.S.*, 163 Vt. at 454, 659 A.2d at 1143 (erroneous evidentiary ruling is grounds for reversal only if it results in prejudice affecting substantial right of party). There was no proffer below, and no demonstration on appeal, as to how Dr. Barnhill's reference to an "indolent period of years" differed from or contradicted Dr. Forcier's testimony that the melanoma could be present for a considerable "subclinical" period, during which time the melanoma would not be clinically detectable. Thus, there is no basis to conclude that the court's ruling, even if erroneous, was prejudicial or warrants reversal. Plaintiff also contends the court erroneously precluded her from impeaching Dr. Forcier's testimony that certain clinical signs, the "ABCD's" of melanoma (asymmetry, border, color, and diameter), applied to superficial spreading melanomas, but not to nodular melanomas. On cross-examination, plaintiff's counsel asked Dr. Forcier whether he disagreed with plaintiff's expert, Dr. Sober, that these clinical signs applied equally to both kinds of melanoma. The court sustained an objection on the ground that Dr. Sober had not so testified. A review of the record reveals that while Dr. Sober referred on at least two occasions to the clinical "ABCD's" in other contexts, he did not testify that they applied to nodular melanomas. Accordingly, there was no error.

## VIII.

Plaintiff next asserts the trial court improperly permitted Dr. Plante, an internist, to testify as a defense expert on the standard of care of Dr. Bell, a family practitioner. Whether a witness may testify as an expert is a matter left to the sound discretion of the trial court. See *State v. Perry*, 151 Vt. 637, 642, 563 A.2d 1007, 1011 (1989). Here, the record amply supported the trial court's finding that, as a physician specializing in primary care internal medicine, Dr. Plante's training and experience in the analysis and treatment of skin lesions was the same as a family practice doctor. Thus, the court did not abuse its discretion.

## IX.

Finally, plaintiff contends the court erred in denying her motions for judgment as a matter of law. On review of a motion for judgment as a matter of law, we view the evidence in the light most favorable to the verdict, excluding the effect of modifying evidence. See *Haynes v. Golub Corp.*, 166 Vt. 228, 233, 692 A.2d 377, 380 (1997). We will uphold the trial court's denial of the motion if any evidence fairly and reasonably supports a lawful theory of the opposing party. See *id.*

Plaintiff renews the claim, asserted below, that the uncontradicted testimony of the standard-of-care witnesses was that Dr. Bell had violated the standard of care by failing to advise Mr. Greene about the risk factors for melanoma at the time of his visit in July 1993. The record, however, supports the trial court's finding that Dr. Plante — defendants' standard-of-care expert — testified that Dr. Bell's actions complied with the standard of care; Dr. Plante indicated that it was not a breach of the standard of care for Mr. Greene to have left Dr. Bell's office without further education about the risk of melanoma because that discussion was properly deferred to a follow-up visit after the results of a biopsy became available. Thus, viewed in the light most favorable to defendants, the evidence supported the court's denial of the motions for judgment as a matter of law.

*Affirmed.*